2007-NMCA-023

152 P.3d 153

STATE of New Mexico ex rel. CHIL-
DREN, YOUTH AND FAMILIES DE-
PARTMENT, Petitioner–Appellee,

v.

BROWIND C., Respondent–Appellant,

and

In the Matter of Lovina B., a Child.

No. 26,196.

Court of Appeals of New Mexico.

Dec. 22, 2006.

Daniel J. Pearlman, Counsel for Children, Youth and Families Department, Santa Fe, NM, for Appellee.

Debra Poulin, Santa Fe, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} Appellant, Browind C. (Mother), appeals the trial court's judgment terminating her parental rights to her daughter, Lovina B. (Child). This case requires us to evaluate the procedure due parents under the Abuse and Neglect Act (Act), NMSA 1978, §§ 32A–4–1 to –34 (1993, as amended through 2005), when a permanent guardianship is revoked. After review of the pertinent statutes and relevant case law, we conclude that Mother's due process rights were not violated. Mother had adequate opportunities to be heard, and substantial evidence supported the trial court's determinations regarding efforts by CYFD to reunify Mother with Child. Accordingly, we affirm.

**I. BACKGROUND**

{2} We begin with a chronology of the proceedings, organized by the months and years in which three sets of factual allega-

tions were filed in regard to the abuse or neglect of Child.

## A. June 1999 Allegations

{3} The Children, Youth and Families Department (CYFD) initially filed a neglect and abuse petition regarding Child against Mother in June 1999, when Child was almost two and a half years old. The affidavit supporting the petition alleged that Mother, who was five to six months pregnant, was using illegal drugs, which affected her ability to parent. The affidavit recommended that legal and physical custody of Child be granted to CYFD, particularly in light of CYFD's previous involvement with Mother and her alleged neglect of Child's older siblings, which began in 1992. The trial court ordered that custody of Child be given to CYFD in an ex parte custody order. *See* § 32A–4–16. After the requisite ten-day custody hearing, the court found probable cause to believe that no parent, guardian, custodian, or other person was able or willing to provide the necessary supervision and care for Child and that her remaining in the home would be contrary to Child's best interest. *See* § 32A–4–18. The court ordered that legal custody remain with CYFD.

{4} Mother entered a voluntary plea of no contest at the adjudicatory hearing as to the allegations that Child was without proper parental care, control, and supervision. *See* § 32A–4–19. In the stipulated adjudication judgment filed September 1999, the trial court found that Child was neglected and/or abused, as defined in the Children's Code, on the basis of the facts alleged in the affidavit supporting the ex parte custody order. The court ordered legal custody to remain with CYFD and further ordered CYFD to implement, and Mother to participate in, the proposed treatment plan. After a dispositional hearing, the trial court found that CYFD made and continued to make reasonable efforts to reunify Child with Mother but that it was in the best interest of Child to remain in the custody of CYFD. *See* § 32A–4–22(A)(9).

{5} In January 2000, CYFD filed a motion asking the trial court to appoint Child's maternal grandmother (Grandmother) as Child's permanent guardian. *See* §§ 32A–4–31, –32.

Mother supported Grandmother's appointment as permanent guardian. In the order granting guardianship, the court adopted the findings in CYFD's motion for permanent guardianship. The court further found that reasonable efforts had been made to reunite the family, that further efforts by CYFD would be unproductive at that time, and that neither reunification nor termination of parental rights was in Child's best interests at that time. The court granted legal custody of Child to Grandmother who was "vested with all the rights and responsibilities of a parent with respect to [Child]." The court expressly retained jurisdiction to enforce, revoke, or modify its order. *See* § 32A–4–32(H)–(K). The court found that the reasons for CYFD's intervention had been addressed by the granting of permanent guardianship to grandmother, and the court therefore relieved the attorneys of further responsibility in the matter by dismissing the abuse and neglect petition without prejudice.

## B. November 2001 Allegations

{6} More than twenty months after Grandmother was appointed Child's permanent guardian, CYFD filed a new petition, alleging neglect and/or abuse of Child and naming Mother, Father, and Grandmother as respondents. The affidavit supporting the petition in the new cause alleged that Grandmother "was using heroin and nodding off while driving with [Child] in the truck" and that Mother was living in the home and using illegal drugs in the Child's presence. The affidavit further stated that Grandmother admitted to using heroin and methadone, admitted that Mother had been using drugs in Child's presence, and admitted that Mother left "drug paraphernalia [lying] around where [Child could] get hold of it." The trial court issued an ex parte custody order transferring custody from Grandmother to CYFD. The court found that probable cause existed to believe Child was abused or neglected and that her remaining in Grandmother's home would be contrary to Child's welfare because of Grandmother's drug use.

{7} After a ten-day custody hearing, at which Mother's attorney was present, the trial court issued a custody hearing order

providing that legal and physical custody of Child should remain with CYFD. The court found that CYFD was excused from making reasonable efforts to prevent Child's removal from Grandmother's home because of her operation of a vehicle while under the influence of heroin with Child in the vehicle. The court also found that CYFD was excused from making reasonable efforts to place the child with Mother because (1) Mother had "no current legal right to care for the child" as a result of Grandmother's appointment as Child's permanent guardian, (2) Mother continued to use drugs, and (3) CYFD planned to move for revocation of Grandmother's permanent guardianship and then move for termination of parental rights because Mother had failed to participate in treatment plans ordered by the court in the first abuse and neglect cause concerning Child. The trial court incorporated the facts alleged in the affidavit supporting the ex parte custody order and the facts pleaded in the abuse and neglect petition. Subsequently, CYFD filed an amended petition, which included additional facts supporting allegations of abuse and neglect. One week later, CYFD filed a motion to revoke Grandmother's permanent guardianship, see § 32A–4–32(I), and a motion to revive and reinstate the first neglect and abuse cause of action, pursuant to NMSA 1978, § 32A–1–18(A) (1995) ("When it appears from the facts during the course of any proceeding under the Children's Code that some finding or remedy other than or in addition to those indicated by the petition or motion are appropriate, the court may, either on motion by the children's court attorney or that of counsel for the child, amend the petition or motion and proceed to hear and determine the additional or other issues, findings or remedies as though originally properly sought." (citation omitted)). Counsel for all parties stipulated to the filing of both motions.

{8} In the petition for extension of time filed in mid-January 2002, CYFD explained its actions in filing a new cause of action and the reasons for the motion to revive and reinstate the original cause. The new cause of action was mistakenly filed by another children's court attorney while the regularly assigned attorney was on vacation. CYFD observed that a motion to revoke the permanent guardianship, instead of a new cause of action, should have been filed in the original cause. CYFD's petition stated that there was "no known opposition to this motion [or] the relief sought, so long as [Grandmother was] afforded a hearing on the merits as to the status of her permanent guardianship."

{9} After a hearing in late January 2002, in which the trial court granted the motion to revive and reinstate, the court issued a restraining order in the original cause of action; the order prohibited Mother from contacting Child, Grandmother, or Child's foster parents, because of Mother's drug use in Child's presence and Child's access to drug paraphernalia. The following month, the court entered a written order reinstating the original cause of action, status quo ante January 11, 2000, the date on which Grandmother was appointed permanent guardian and the neglect and abuse petition was originally dismissed without prejudice. In the same order, the court dismissed the new cause of action without prejudice.

{10} The trial court held a hearing in May 2002 with regard to permanency review, implementation of a treatment plan for Grandmother, and a request for extension of custody. At that hearing, Mother's attorney stated that Mother "wants her child to be safe—understand—she can't provide [that] kind of safety for her but thinks that her mother can." Mother advised the court, through her attorney, that she wanted Child to be returned to Grandmother under any kind of supervision the court deemed necessary to ensure Child's safety, "so that the child could be back home with [the person] she's always known as her mother."

{11} Subsequently, the trial court entered a judgment adopting the treatment plan for Grandmother and Mother and establishing that the permanency plan was reunification with Grandmother. Because Mother was incarcerated at the time, her treatment plan simply provided that she immediately contact the social worker to discuss the case when Mother was released from jail. The treatment plan also provided for the possibility of visits between Mother and Child during

Mother's incarceration, at the discretion of CYFD and based on therapist recommendations.

{12} After a periodic judicial review hearing in December 2002, the trial court restored permanent guardianship with Grandmother and consequently dismissed the original petition without prejudice again. A second permanent restraining order was issued, which prohibited Mother from having any contact with Child, Grandmother, and Child's school and treatment professionals. Grandmother's guardianship was subject to her enforcement of the restraining orders issued against Mother.

## C. March 2004 Allegations

{13} In March 2004, CYFD was awarded emergency custody of Child when Grandmother and Mother were arrested for possession of illegal drugs and child abuse. The trial court again issued an ex parte custody order granting custody of Child to CYFD. The court found that Child's placement in the home would be contrary to her welfare because Grandmother was using, possessing, and providing illegal drugs in the residence shared by Child and because Grandmother had failed to enforce the restraining order prohibiting Mother's contact with Child. When CYFD filed its affidavit in support of the ex parte custody order, it also filed a petition to revive and reinstate, for the second time, the original neglect and abuse cause, effective status quo ante January 11, 2000. The cause was "revived for further relief based on recent allegations of abuse and neglect of [Child], and on the allegation that the current permanent guardian violated an Order previously issued." After a custody hearing with respect to Grandmother as permanent guardian, the court ordered custody to remain with CYFD. Mother did not appear, in person or by attorney, at the custody hearing because she had not yet been served.

{14} In June 2004, CYFD filed a request for a change in the permanency plan from permanent guardianship to termination of parental rights and adoption. *See* § 32A–4–25.1(E); *see also* § 32A–4–28. The following month, CYFD filed a motion for termination of parental rights. After a hearing at which Mother and Grandmother were present and represented by counsel, the trial court ordered the permanent guardianship revoked. Pursuant to the Children's Code, the court found that Child was abused and neglected, as alleged in the motion to revoke guardianship, and the court ordered that custody remain with CYFD.

{15} After hearings at which Mother was present and represented by counsel, the trial court approved the change in the permanency plan from permanent guardianship to termination of parental rights and adoption. The court adopted the findings and conclusions submitted by CYFD, with amendment. As part of the judgment and order, the court specifically found (1) that Child "is and has been a neglected child as defined in the ... Act," (2) that "[f]urther efforts by [CYFD] to assist the mother in reunifying with her child would not make any difference and are not necessary," (3) that CYFD "made reasonable efforts to assist [Mother] in adjusting the conditions that render [her] unable to properly care for [Child]," and (4) that "the conditions and causes of the neglect are unlikely to change in the foreseeable future[,] despite the reasonable efforts that were made by [CYFD] or other appropriate agency to assist [Mother] in adjusting the conditions that render [her] unable to properly care for [Child]." (Emphasis omitted.)

{16} Finally, after contested evidentiary hearings, the trial court issued a judgment terminating Mother's parental rights. In the court's findings and conclusions, it stated that it took judicial notice of the previous findings and conclusions, as well as the judgment and order, which were issued by the court in May 2005, when it ordered the change in the permanency plan, as requested by CYFD. The parties "stipulated that the [c]ourt could ... receive[,] as admissible evidence on the elements of [CYFD's] motion to terminate parental rights, all of the matters ... set forth in" those documents. The court observed that the judgment and order regarding the change in the permanency plan also "incorporated and included the [c]ourt's earlier supporting findings of fact and conclusions of law." The parties further stipulated,

and the court found, that these incorporated documents "established by clear and convincing evidence ... each of the allegations set forth in [CYFD's] motion for termination of parental rights to the extent that evidence was presented to prove a particular allegation." (Emphasis omitted.) In addition, the court found that the documentary evidence and Mother's testimony at the termination hearing established by clear and convincing evidence (1) that Mother "has never been voluntarily free or clean of illegal drugs since she [was] eleven ... years old" (emphasis omitted), (2) that during the time from Grandmother's appointment as permanent guardian until Mother's arrest for drug possession and child abuse in March 2005, Mother "never contacted or sought assistance from [CYFD] for her drug problem or to express an interest in regaining custody of [Child]," and (3) that during this same period, Mother never contacted any attorney or advocate in order to set aside Grandmother's permanent guardianship and regain custody of Child. Finally, the court found that Mother's current sobriety, since the time of her arrest in March 2005, was enforced and made possible by her incarceration and court supervision while she awaited trial on child abuse charges. Further facts will be provided as necessary in our discussion below.

{17} Mother filed a timely notice of appeal from the judgment terminating parental rights. She argues that she was denied due process and that the trial court's finding in regard to CYFD's reasonable efforts to reunify Mother with Child was not supported by clear and convincing evidence. We address each argument in turn.

## II. STANDARD OF REVIEW

■ {18} The question of adequate due process in an abuse and neglect proceeding is reviewed de novo. *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004–NMCA–083, ¶ 36, 136 N.M. 53, 94 P.3d 796. When reviewing the trial court's determination that CYFD made reasonable efforts, we ask "whether the trial court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the trial court

could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't (Patricia H.)*, 2002–NMCA–061, ¶ 31, 132 N.M. 299, 47 P.3d 859.

## III. DISCUSSION

### A. Due Process

■ {19} According to Mother, the revival of the original abuse and neglect petition allowed CYFD to circumvent the procedures provided by the Act and thus deprive her of due process. Mother contends that after the allegations of abuse and neglect in 2004, she was entitled to custody, adjudicatory, and dispositional hearings, pursuant to Sections 32A–4–18, –19, –22(C) of the Act. Thus, she argues that the failure to provide her with these hearings resulted in a denial of her constitutional rights to due process.

■ {20} Parental rights cannot be terminated without due process of law. *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003–NMSC–015, ¶ 18, 133 N.M. 827, 70 P.3d 1266. Process is due when a proceeding could affect or interfere with the relationship between a parent and a child. *Maria C.*, 2004–NMCA–083, ¶ 24, 136 N.M. 53, 94 P.3d 796. Termination proceedings, in particular, must be held with "scrupulous fairness" to the parent, *State ex rel. Children, Youth & Families Dep't v. Robert E.*, 1999–NMCA–035, ¶ 19, 126 N.M. 670, 974 P.2d 164 (internal quotation marks and citation omitted), because a parent's right to a relationship with her child is a fundamental right "far more precious ... than property rights." *Mafin M.*, 2003–NMSC–015, ¶ 20, 133 N.M. 827, 70 P.3d 1266 (internal quotation marks and citation omitted). Due process rights are flexible, depending on the nature of the proceeding, the interests involved, and the nature of subsequent proceedings. *Maria C.*, 2004–NMCA–083, ¶ 25, 136 N.M. 53, 94 P.3d 796 (recognizing that more process is due at termination proceedings than at proceedings in which a parent is "resisting state intervention into ongoing family affairs" (internal quotation marks and citation omitted)). "Because the statutory scheme is unitary in nature, the process due at each stage should be evaluated in light of

the process received throughout the proceedings." *Id.* ¶ 35.

{21} To provide the necessary context for our discussion, we begin with an overview of the procedures provided by the Act. We then review the procedure used by the trial court in reviving and reinstating the original petition. Lastly, we use the test from *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to evaluate the process given to Mother.

### 1. Procedures Provided by the Act

#### a. Abuse and Neglect Procedural Statutes

{22} When a child alleged to be neglected or abused is in CYFD's temporary custody, a custody hearing must be held within ten days of the filing of the petition. Section 32A–4–18(A). Notice is required, and CYFD must make "[r]easonable efforts ... to preserve and reunify the family, with the paramount concern being the child's health and safety." Section 32A–4–18(B), (D). Thereafter, an adjudicatory hearing is held within sixty days. Section 32A–4–19(A). The trial court hears evidence at this hearing if the allegations of abuse or neglect are denied. Section 32A–4–20(G). If the allegations are admitted or there is clear and convincing evidence of neglect or abuse, the court may proceed immediately or at a postponed hearing to make disposition of the case. Section 32A–4–20(H).

{23} Generally, a dispositional hearing must be held within thirty days of the adjudicatory hearing. Section 32A–4–22(A). At the dispositional hearing, the trial court is required to make a number of findings, including findings relative to CYFD's efforts to prevent the child's removal from the parents' home in the first place, as well as the efforts to reunify the child with the parents after the removal. Section 32A–4–22(A)(9). The trial court is also required to order CYFD to implement, and the parties to cooperate with, any treatment plan approved by the court. Section 32A–4–22(C). While Section 32A–4–22(C) requires that reasonable efforts be made to preserve and reunify the family, the statute is clear that the paramount concern is

the health and safety of the child. Consistent with this concern, reasonable efforts are not required if the efforts would be futile or if the child has been subject to aggravated circumstances created by the parent, guardian, or custodian. Section 32A–4–22(C)(1), (2).

{24} If the trial court determines that no reasonable efforts at reunification are required, Section 32A–4–22(J) directs that the next step is a permanency hearing. This is held pursuant to Section 32A–4–25.1, and the purpose is to determine what permanency plan is in the child's best interest. *See* NMSA 1978, § 32A–1–4(P) (2005) (defining "permanency plan" as a determination that the interest of the child is best served by one of several options, including reunification, adoption, and permanent guardianship); *see also* § 32A–4–22(J); Rule 10–325(A) NMRA. Reasonable efforts must be made "to implement and finalize the permanency plan in a timely manner." Section 32A–4–22(J).

#### b. Guardianship Statutes

{25} To establish a permanent guardianship, the trial court must first find that the guardianship is in the best interests of the child. Section 32A–4–31(C). Additionally, the court must find the following four factors: (1) the child has been adjudicated as abused or neglected; (2) reasonable efforts have been made by CYFD to reunite the child with the parent and further efforts would be unproductive; (3) reunification is not in the child's best interests because the parent continues to be unwilling or unable to adequately care for the child; and (4) the possibility of adoption is remote, or termination is not in the child's best interests. *Id.; see also* Rule 10–325. When a permanent guardianship is granted, the parent is divested of legal custody or guardianship of the child, but parental rights are not terminated. Section 32A–4–32(F).

{26} The trial court retains jurisdiction to enforce its judgment of permanent guardianship. Section 32A–4–32(H). Any party may move for revocation based on a significant change of circumstances, and the trial court may revoke the guardianship "when a significant change of circumstances has been prov-

en by clear and convincing evidence and it is in the child's best interests to revoke the order granting guardianship." Section 32A–4–32(I), (K). A "significant change of circumstances" includes those instances when "(1) the child's parent is able and willing to properly care for the child; or (2) the child's guardian is unable to properly care for the child." Section 32A–4–32(I). Except for the right to file a motion to revoke the permanent guardianship, there are no specific procedures relating to parents that must be followed during the revocation process.

## 2. Revival and Reinstatement of the Original Petition

{27} Mother asserts that CYFD and the trial court circumvented the procedures required by the Children's Code by reviving and reinstating the original abuse and neglect petition relating to Child. We disagree. Again, we look to the statutes. In a typical case, once the custody, adjudicatory, and dispositional hearings have concluded, other proceedings involving the parties and their attorneys occur. For example, periodic reviews are held to monitor the progress of the case. Section 32A–4–25. However, when a permanent guardianship is established, the procedural requirements change because the terms of the guardianship control. Sections 32A–4–31, –32. The trial court retains jurisdiction to enforce the judgment of permanent guardianship. Section 32A–4–32(H). When the trial court dismissed this case without prejudice, the court recognized the procedural changes and made a finding that the purpose of the dismissal was to relieve the attorneys of further statutory duties in the matter because CYFD's intervention had been addressed by the court's granting permanent guardianship to Grandmother.

{28} Preliminarily, we observe that from a procedural point of view, dismissals are generally governed by Rule 1–041 NMRA. *See* Rule 1–041(E) (providing that the court shall reinstate a case dismissed without prejudice pursuant to Rule 1–041(E) if a motion to do so is made within thirty days of the order of dismissal and good cause is shown). We recognize that proceedings pursuant to the Children's Code are not governed by Rule 1–

041 and that the time limits of the rule therefore do not apply. Rule 1–041(F)(4). However, the rule supports the basic proposition that courts may dismiss a case without prejudice and subsequently reinstate the case. This procedure is not new.

{29} We read the provisions of the Act with reference to each other. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 104 N.M. 644, 650, 725 P.2d 844, 850 (Ct.App.1986) (stating that statutory provisions of the Act should be read in *pari materia* ). In our case, the trial court dismissed the petition without prejudice because the terms of the guardianship were controlled by statute; thus, there was no need to continue the proceedings under other provisions of the Act. *See* § 32A–4–32(E)–(G). Thus, when the motion for revocation of guardianship was filed under the court's continuing jurisdiction, pursuant to Section 32A–4–32(H), (K), the trial court was within its power to reinstate the original cause because it was from this original cause that the guardianship emanated. *Cf. Gonzales v. Maes*, 106 N.M. 342, 344, 742 P.2d 1047, 1049 (1987) (concluding that a conditional motion to dismiss without prejudice did not become a final order because the plaintiff satisfied the condition by requesting reinstatement); *In re Daniel H.*, 2003–NMCA–063, ¶¶ 20–22, 133 N.M. 630, 68 P.3d 176 (stating that a dismissal under NMSA 1978, § 32A–2–21(G) (1995), based on the incompetency of a minor, is without prejudice and that the charge against the minor may thus be reinstated if the child becomes competent). Finally, we observe that Mother made no objection in 2002 and, in fact, agreed to the revival and reinstatement of the original action at that time. For all of these reasons, we conclude that the trial court did not err by reviving and reinstating the original neglect and abuse petition.

## 3. *Mathews* Test

{30} Except for her arguments regarding the reinstatement of the original petition, which we addressed above, Mother does not point to any language in the statutes that would entitle her to custody, adjudicatory, and dispositional hearings before her rights

were terminated. Rather, she argues that due process entitled her to these hearings.

{31} We use the balancing test in *Mathews* to evaluate whether due process was satisfied when parental rights were terminated. *Mafin M.*, 2003–NMSC–015, ¶ 19, 133 N.M. 827, 70 P.3d 1266. We weigh three factors: (1) the mother's interest, (2) the risk to the mother of an erroneous deprivation through procedures used and the probable value of additional or substitute procedures as safeguards, and (3) the government's interest. *Id.* In our case, Mother's interest in retaining a relationship with Child is great, and CYFD's interest in protecting Child's welfare is equally significant. *See id.* ¶ 20. Thus, we focus on the second factor in the *Mathews* test: the risk of erroneous deprivation and the value of additional procedural safeguards. *See In re Pamela A.G.*, 2006–NMSC–019, ¶ 13, 139 N.M. 459, 134 P.3d 746; *Mafin M.*, 2003–NMSC–015, ¶¶ 19, 20, 133 N.M. 827, 70 P.3d 1266. Our conclusion does not depend on a showing that Mother would have been successful if she had been provided with the additional procedures she alleges should have been provided; rather, Mother need only show "that there is a reasonable likelihood that the outcome *might* have been different." *Maria C.*, 2004–NMCA–083, ¶ 37, 136 N.M. 53, 94 P.3d 796.

### a. Erroneous Deprivation

{32} Specifically, Mother contends that CYFD's failure to provide her with the custody, adjudicatory, and dispositional hearings after the March 2004 petition resulted in (1) deprivation of the benefit of judicial reviews, (2) deprivation of her right to an adjudication of the neglect and abuse, and (3) deprivation of an opportunity for a treatment plan. *See* §§ 32A–4–18, –19, –22(C). We do not agree.

{33} Over the course of several years, Mother was afforded numerous opportunities to be heard and to present a defense. *See Mafin M.*, 2003–NMSC–015, ¶¶ 18, 21, 133 N.M. 827, 70 P.3d 1266 (stating that procedural due process requires that an individual be afforded an opportunity to be heard and to present a defense, in a meaningful manner and at a meaningful time). The following appearances are most relevant to Mother's arguments regarding a lack of due process after the March 2004 petition was filed. Mother was present and represented by counsel at the pre—adjudicatory hearing meeting on May 10, 2004, at the adjudicatory hearing regarding the revocation of guardianship, at the hearing regarding the change in the permanency plan, and at the hearing regarding termination of her parental rights. Mother proffered evidence, testified extensively, and cross-examined all of CYFD's witnesses at both the change in the permanency plan hearing and the termination of parental rights hearing. Considering all of these opportunities for judicial review, we conclude that Mother was not erroneously deprived of the benefits of judicial review.

{34} We also conclude that Mother was not erroneously deprived of an adjudication of abuse and neglect regarding the allegations in 2004. After the March 2004 petition, the trial court specifically found, by clear and convincing evidence, that Child "is and has been a neglected child as defined in the ... Act." This adjudication of neglect was premised on new facts, alleged in the 2004 pleadings and subsequently issued as findings of fact, to which Mother stipulated.

{35} We further conclude that Mother was not erroneously deprived of an opportunity for a treatment plan. Mother requested the imposition of a treatment plan at both the hearing for a change in the permanency plan and the hearing to terminate parental rights. However, the trial court determined that reunification, whereby a treatment plan would be ordered, was not a feasible permanency plan alternative. Consequently, the court concluded that further efforts for reunification, including a treatment plan, were not required. Thus, Mother was not erroneously deprived of an opportunity for a treatment plan.

### b. Value of Additional Procedures

{36} Moreover, we see no probable value in providing Mother with additional process through custody, adjudicatory, and dispositional hearings in 2004. Given Mother's history of drug abuse, the lack of a parent-child relationship, the restraining orders prohibit-

ing Mother's contact with Child, and Mother's arrest and incarceration on child abuse and drug charges, there is no realistic possibility that custody would have been given to Mother at that time. Further, under these circumstances, there is no realistic possibility that Child would not have been adjudicated as neglected within the requisite time frame for an adjudicatory hearing. Mother testified that she was convicted of criminal child abuse as a result of her arrest in March 2004, when she entered an *Alford* plea acknowledging that sufficient evidence existed for conviction. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). This is clear and convincing evidence that supports the trial court's adjudication of Child as abused and neglected after the March 2004 petition was filed. *See* § 32A–4–20(H) (equating an admission of the allegations of the petition with clear and convincing evidence); Rule 10–307(A)(1), (2) NMRA (stating that an admission is made by "admitting sufficient facts to permit a finding that the allegations of the petition are true; or . . . declaring [an] intention not to contest the allegations"). Providing additional hearings under these circumstances would be a needless and inefficient use of CYFD's scarce resources. *See State ex rel. Children, Youth & Families Dep't v. Amy B.,* 2003–NMCA–017, ¶ 17, 133 N.M. 136, 61 P.3d 845 (stating that government resources are limited and that the state "has a legitimate interest in making the best use of its limited resources" (internal quotation marks and citation omitted)).

{37} We also see no additional value in providing Mother a dispositional hearing pursuant to Section 32A–4–22. Our review of the record reveals that the court considered the factors enumerated in Section 32A–4–22(A) and issued relevant findings, to which Mother stipulated. Further, as discussed in paragraph 44 of this opinion, the trial court considered whether reasonable efforts were required, just as the court is directed in Section 32A–4–22(C). Thus, we see no value in requiring a dispositional hearing for Mother after the guardianship was revoked.

{38} In conclusion, we hold that providing Mother with additional process

through custody, adjudicatory, and dispositional hearings after the guardianship was revoked would have little, if any, value. *Cf. Maria C.,* 2004–NMCA–083, ¶ 47, 136 N.M. 53, 94 P.3d 796 ("The facts in this case sealed the family's fate, not [the m]other's presence or absence at the permanency hearings."). Mother was provided with the requisite proceedings in the initial stages of the abuse and neglect proceeding; at that time, the court concluded that it was in Child's best interests to have a permanency plan of permanent guardianship. Given the facts to which Mother has stipulated and the opportunities she has had to be heard, we do not believe "that there is a reasonable likelihood that the outcome might have been different." *Id.* ¶ 37 (emphasis omitted). A parent is not entitled to "start over" when a permanent guardianship is revoked. Rather, the parent has an opportunity to show that it is in the child's best interest to have a change of the permanency plan from a permanent guardianship to reunification. Mother had this opportunity at the change in the permanency plan hearing and at the termination hearing. In various circumstances, different procedural protections and safeguards provide the "scrupulous fairness" required under the Act. *See In re Pamela A.G.,* 2006–NMSC–019, ¶ 18, 139 N.M. 459, 134 P.3d 746 (observing that when the trial court considers the admission of hearsay evidence for each case, the court must determine the proper procedure and safeguards, based on the nature of the parent-child relationship and the age and emotional state of the child) (internal quotation marks and citation omitted).

{39} Our conclusion is consistent with the procedures provided by the Act. Because a permanent guardianship under the Act is ordinarily granted as a permanency plan, *see* § 32A–4–25.1(B)(3); *see also* § 32A–1–4(P)(3), a hearing to review and change the permanency plan, pursuant to Section 32A–4–25.1, should be the next step when a permanent guardianship is revoked. *See* § 32A–4–25.1(B)–(D). At that time, a parent has the opportunity to present evidence that the permanency plan should be reunification. *See* § 32A–4–25.1(B), (D). If after hearing the evidence, the trial court determines that the child should be returned to the parent's

custody, the court may then impose any conditions, including a treatment plan. *See* § 32A-4-25.1(D)(3).

{40} "Parents do not have an unlimited time to rehabilitate and reunite with their children." *Maria C.*, 2004-NMCA-083, ¶ 21, 136 N.M. 53, 94 P.3d 796; *see also Patricia H.*, 2002-NMCA-061, ¶ 26, 132 N.M. 299, 47 P.3d 859 (using the federal fifteen-month period for time-limited reunification services as guidance in assessing the duration of reasonable efforts under state law); *New Mexico Child Welfare Handbook: A Legal Manual on Child Abuse and Neglect* § 20.2 (N.M. Judicial Educ. Ctr., Inst. Pub. Law 2003) (providing a timeline under the Children's Code); *id.* § 20.4.3 ("[T]he court must determine a permanency plan ... within 12 months of the date the child is considered to have entered foster care[.]"). We are mindful of the detrimental effects on a child that occur from prolonged uncertainty and instability. *See Maria C.*, 2004-NMCA-083, ¶ 45, 136 N.M. 53, 94 P.3d 796. Given the history of CYFD's intervention on behalf of Child since 1999, we believe that she had a pressing need for permanency. *See Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 ("When balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests." (internal quotation marks and citation omitted)); *Maria C.*, 2004-NMCA-083, ¶ 45, 136 N.M. 53, 94 P.3d 796 ("Prolonged uncertainty and instability [are] particularly detrimental to the child.").

{41} Child has not been in Mother's custody since June 1999. Grandmother has been the primary caregiver for Child's entire life, as if Grandmother were Child's mother. Child was first in CYFD custody from June 1999 until January 2000, when Grandmother was appointed permanent guardian. During the permanent guardianship, Child was removed from Grandmother's home and again placed in CYFD's custody from November 2001 until January 2003. Mother's presence in Child's life during the permanent guardianship was so detrimental that the trial court entered two permanent restraining orders prohibiting Mother from contacting Child or Child's caregivers. Child was placed with adoptive foster parents approximately eleven months before the trial court ordered the change in the permanency plan. The legislature has made clear that the paramount concern is the welfare of the child. Since the undisputed facts show the detrimental effect of Mother's presence in Child's life from June 1999 through March 2004, we cannot conclude that the court erred by putting Child's interests first.

**B. Reasonable Efforts to Assist Mother with Reunification and Remedying the Causes and Conditions of Neglect**

{42} Mother also argues that CYFD failed to prove, by clear and convincing evidence, that it made reasonable efforts to assist Mother with reunification and remedying the causes and conditions that led to Child's removal because CYFD made no efforts after the March 2004 petition. Mother contends that the "minimal efforts" made when the original petition was filed are not sufficient to support a determination that further efforts were not required. CYFD admits that it made no additional efforts to assist Mother after the March 2004 petition was filed. Mother misreads the Act.

{43} A permanent guardianship may be established only when the trial court finds, inter alia, that "further efforts by [CYFD] would be unproductive." Section 32A-4-31(C)(2). Thus, once the guardianship was granted, CYFD was no longer required to make reasonable efforts. When a guardianship is revoked on grounds that the guardian is no longer able to properly care for the child, the permanency plan does not automatically become reunification, whereby reasonable efforts are required. *See* § 32A-4-32(I)(2); *see generally* §§ 32A-4-25.1, -32(I)-(K). Rather, as in a permanency review hearing, the court will determine what the new permanency plan should be. *See* § 32A-4-25.1(D). Only if the court determined that the permanency plan should be reunification would the court order CYFD to implement a treatment plan. *See* § 32A-4-25.1(D)(3).

{44} Moreover, reasonable efforts are not required if such efforts would be futile. *Ma-*

*ria C.*, 2004–NMCA–083, ¶ 23, 136 N.M. 53, 94 P.3d 796 ("CYFD has a continuing duty to make reasonable efforts to preserve and reunify the family, until the district court finds that its efforts would be futile."). *See generally* § 32A–4–22(C)(1) (regarding futility and the disposition of a child who has been adjudicated abused or neglected); § 32A–4–25(H)(5) (regarding futility and periodic review of dispositional judgments); § 32A–4–28(B)(2) (regarding futility and termination). In our case, the trial court initially found that further efforts would be unproductive when the permanent guardianship was granted. Again, in late 2001, the court found that CYFD was excused from making reasonable efforts to place Child with Mother because she did not have custody, she continued to use drugs, and CYFD planned at that time to move for termination of parental rights, due to Mother's failure to participate in previous treatment plans ordered by the court. Again, after contested hearings regarding the change in the permanency plan in May 2005, the court found that further efforts to assist Mother in reunification "would not make any difference and are not necessary." Thus, contrary to Mother's assertions, the court clearly found that further efforts would be futile. The trial court adopted numerous findings of fact that support its determination, including the following. Mother was never the primary caregiver for Child because of Mother's drug addiction, which has been chronic, severe, and continuous since she was an adolescent and until March 2004, when she was arrested for child abuse. Mother consented to Grandmother's appointment as permanent guardian because of Mother's drug use and failure to comply with a treatment plan. Mother relinquished her parental rights to Child's younger sibling in 2001 because of Mother's continued drug use and her failure to comply with the treatment plan ordered in that case. From the time Grandmother was appointed guardian until Mother was released from jail in May 2004, Mother made no efforts to make changes in her addiction. She has stipulated to the facts supporting these findings. Thus, we conclude that substantial evidence, of a clear and convincing nature, existed to support the trial court's determination that further efforts would be futile. *See Amy B.*, 2003–

NMCA–017, ¶ 19, 133 N.M. 136, 61 P.3d 845 (concluding "that the trial court did not abuse its discretion in relieving [CYFD] of its obligation to make reasonable reunification efforts"); *Patricia H.*, 2002–NMCA–061, ¶ 28, 132 N.M. 299, 47 P.3d 859 ("[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law."); *cf. State ex rel. Children, Youth & Families Dep't v. Joe R.*, 1997–NMSC–038, ¶ 25 n. 2, 123 N.M. 711, 945 P.2d 76 (declining to address the question of a clear showing of futility because "there was sufficient evidence for a prima facie showing of reasonable efforts").

■ {45} We commend Mother's recent success at sobriety and encourage her to stay the course. Unfortunately, however, the trial court was faced with "too little, too late." *See Amy B.*, 2003–NMCA–017, ¶ 18, 133 N.M. 136, 61 P.3d 845 (internal quotation marks and citation omitted). "[W]e construe the provisions of the Children's Code so that '[t]he child's health and safety shall be the paramount concern.'" *State ex rel. Children, Youth & Families Dep't (Michelle B.)*, 2001–NMCA–071, ¶ 38, 130 N.M. 781, 32 P.3d 790 (alteration in original) (quoting NMSA 1978, § 32A–1–3(A) (1999)).

## IV. CONCLUSION

{46} We conclude that the trial court did not err by reviving and reinstating the original petition and that Mother's due process rights were not violated when she did not receive additional procedures. We further conclude that CYFD made a clear showing that further efforts to reunify Mother with Child would be futile after the 2004 allegations, and thus reasonable efforts were not required. Thus, we affirm the trial court's judgment terminating Mother's parental rights.

{47} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.