This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38516**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**VENESSA S.,**

       Respondent-Appellant,

**IN THE MATTER OF
CHRISTOPHER S., SEAN S.,
and ANTHONY J.M.,**

       Children.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
Thomas F. Stewart, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant

Rio Law Firm
Francis J. Rio, III
Clovis, NM

Guardian Ad Litem

**DECISION**

**B. ZAMORA, Judge.**

**{1}** Venessa S. (Mother) appeals the district court's judgment terminating her parental rights to her children, A.M., C.S., and S.S. (Children). Mother argues that substantial evidence does not support the district court's finding that Mother was unlikely to change the conditions and causes of her neglect within the foreseeable future. We affirm.

**BACKGROUND**

**{2}** In January 2018 the Children, Youth, and Families Department (CYFD) took custody of Children who were ages eight, six, and two at the time. After CYFD received test results showing that all three children had tested positive for methamphetamine, it filed a petition alleging Children were abused and neglected by Mother. Mother entered a no contest plea to neglect at the adjudicatory and dispositional hearing in April 2018, and the district court found that Mother had neglected Children "as defined in [NMSA 1978,] Section 32A-4-2(G)(2) [(2018)]." The court also found that it was "in the best interest of [C]hildren [to] be in the legal custody of CYFD" and ordered that CYFD make reasonable efforts to implement a court-approved case plan. The case plan required Mother to: (1) complete a psychological evaluation with a substance abuse component; (2) participate in all scheduled visits "at the discretion of CYFD"; (3) participate in random drug testing; (4) "participate and demonstrate skills learned in parenting class"; (5) provide a clean and stable home; (6) attend domestic violence counseling; (7) participate in individual therapy; (8) participate in family counseling; and (9) "gain insight and understanding of [A.M.]'s medical behavioral issues by participating in [A.M.]'s treatment."

**{3}** Nine months after Children had been taken into custody, on October 19, 2018, CYFD filed a motion to terminate Mother's parental rights alleging that Mother was "unable or unwilling to provide proper parental care" for Children and that it was "unlikely that this situation [would] change in the foreseeable future[.]" The district court held a permanency hearing in December 2018 and found that because Mother had "made little progress in her case plan" and CYFD had "made reasonable efforts to finalize the permanency plan currently in effect," CYFD was "relieved from its obligation to make reasonable efforts to implement the case plan[.]" The district court also made a futility finding, relieving CYFD "from its obligations to make reasonable efforts to implement the case plan" for Mother.

**{4}** The first day of the termination of parental rights (TPR) hearing was held on February 21, 2019. After hearing the evidence on that day, the district court held the TPR determination in abeyance for sixty days and encouraged Mother to do "everything [she] possibly can, as strongly as [she] can" in order to keep her parental rights. The TPR hearing resumed on April 18, 2019, after which the district court entered the following pertinent findings:

9. There was an [i]nitial [p]ermanency [o]rder entered December 13, 2018 which contained a futility finding relieving [CYFD] from making reasonable efforts to assist [Mother] in completing her case plan due to her lack of compliance with her case plan at that time and judicial notice was taken of the [o]rder.

. . . .

12. [CYFD] made efforts to assist [Mother] in resolving the causes and conditions that brought [C]hildren into custody. These efforts include:

A. Develop[ing] a case plan for [Mother] to address the reasons [C]hildren came into [CYFD's] custody;

B. Review[ing] the case with [Mother] multiple times;

C. Ma[king] referrals to services for [Mother];

D. Continu[ing] to try and maintain contact with [Mother];

E. Assist[ing] with transportation for [Mother] to attend visitations with [C]hildren;

F. Ma[king] additional referrals after the futility finding was made December 13, 2018 to assist and help [Mother];

. . . .

27. [Mother] has not maintained a regular visitation schedule with [C]hildren throughout the case, despite [CYFD's] arrangements for visitation with [C]hildren and for transportation as necessary.

. . . .

29. [Mother] has not completed parenting classes. As of April 18, 2019, [Mother] had completed one parenting class.

. . . .

31.    [Mother] does not understand how her past drug use or domestic violence has [a]ffected [C]hildren.

. . . .

37.    [Mother] had not completed her case plan by the time of the second hearing on the motion [for TPR] on April 18, 2019 and did not appear to have made much, if any, progress towards understanding the causes or alleviating the conditions that resulted in [C]hildren being taken into custody by [CYFD].

The district court concluded that CYFD had "proven by clear and convincing evidence that [Children] are neglected children" and that the "causes and conditions of the neglect that brought the [C]hildren into [CYFD's] custody are unlikely to change in the foreseeable future despite the reasonable efforts by [CYFD] and other appropriate agencies to assist [Mother] in adjusting the conditions which render [her] unable to properly care for [Children]." This appeal followed.

## DISCUSSION

### Substantial Evidence Supported the District Court's Findings

{5}    On appeal, Mother does not dispute the district court's findings of fact, and instead argues that the district court erred in finding the conditions and causes of Children's neglect were unlikely to change in the foreseeable future, because the "evidence in the record establishes that by the time of the [TPR] hearing, Mother had turned her life around and, with a little assistance, would shortly be in a position to parent Children." Mother also contends that the district court "abused its discretion in failing to reverse its futility finding and allow Mother to have more time to remedy the causes and conditions of her neglect of Children with help from CYFD." CYFD acknowledges "the great strides [Mother] made in the early part of 2019," but maintains that the district court "focused multiple findings on Mother's failure to demonstrate—at the time of [the TPR hearing]—that she understood or could meet Children's mental, physical, and emotional needs."

{6}    "A court seeking to terminate parental rights based on abuse or neglect must find that (1) the child was abused or neglected, (2) causes of the abuse or neglect were unlikely to change in the foreseeable future, and (3) CYFD made reasonable efforts to assist the parent in adjusting the conditions." *State ex rel. Children, Youth & Families Dep't v. Melvin C.*, 2015-NMCA-067, ¶ 15, 350 P.3d 1251 (internal quotation marks and citation omitted); *see also* NMSA 1978, § 32A-4-28(B)(2) (2005). CYFD bears the burden of proving that parental rights should be terminated "by clear and convincing evidence." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State*

*ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted).

**{7}** On appeal, this Court "will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Therefore, we must determine "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859.

**{8}** We conclude there was substantial evidence presented by CYFD for the district court to find that the conditions and causes of Children's neglect were unlikely to change in the foreseeable future. At the TPR hearing, Mother admitted that she had not yet completed "any items on her case plan" and that she had only attended eleven of the twenty-five scheduled visits with Children. Mother testified that she had been living in a domestic violence shelter since January 18, 2019, had not seen her abusive husband for six months, and had been "free of all substances" for "a month." However, Madelaine La Rosa-Corliss, the permanency planning worker (PPW) at CYFD assigned to Mother's case, testified that although Mother had called in regularly for her drug testing in January 2019 and had begun her substance abuse counseling, Mother still had not begun her domestic violence counseling or attended any parenting classes. She also testified that Mother had tested positive for methamphetamine three times in the last eight months, with one of those times in January 2019 after the futility finding.

**{9}** At the time of the continued TPR hearing, Mother was still living at a domestic violence shelter with plans to move to Deming, despite the fact that her housing application had not yet been approved. Even though Mother began attending individual counseling and group counseling to learn her "triggers," she could not articulate what her triggers were, contending that there were "too many to count." Mother also failed to participate in A.M.'s medical and behavioral treatment and had not called A.M. testifying that "it's up to him if he wants to talk to me." Although Mother was learning coping skills and had demonstrated "less anger and frustration," the PPW did not believe that "there ha[d] been enough time" for Mother to "demonstrate what she had learned." By the second day of Mother's TPR hearing, Children had already been in the custody of CYFD for approximately fifteen months. *See In re Termination of Parental Rights of Reuben & Elizabeth O. v. Dept. of Health Services*, 1986-NMCA-031, ¶ 36, 104 N.M. 644, 725 P.2d 844. (explaining that when "balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern[,]" thus, forcing "the children to wait for the uncertain possibility that the natural parents, despite their persistent and long standing disregard of the children's interest," will instead "remedy past faults which may have rendered the children neglected.").

**{10}** We recognize, as did the district court, that in the months preceding the TPR hearing, Mother made progress in her sobriety and treatment. However, substantial evidence presented by CYFD demonstrated that Mother was not likely to make the necessary changes in the "foreseeable future." *See Patricia H.*, 2002-NMCA-061, ¶ 34 (explaining that "the term 'foreseeable future' [refers] to corrective change within a reasonably definite time or within the near future." (internal quotation marks and citation omitted)). The district court found that despite her recent progress, Mother did "not understand how her past drug use or domestic violence ha[d] [a]ffected" [C]hildren, Mother did not actually believe she needed domestic violence and substance abuse counseling, and Mother had yet to complete her case plan and had no firm plan for housing. Our review of the record supports the district court's finding. While Mother acknowledged she was required to attend domestic violence counseling, she did not comply because she "[was] no longer with [her spouse]." Similarly, the PPW testified at the first day of the TPR hearing that Mother had been resistant to substance abuse counseling because Mother "says that she stopped by herself and didn't need it." By the April 2019 hearing, Mother had attended two family therapy sessions for S.S. but had not attended any family therapy for A.M,[1] and had only completed one of her eight parenting classes. While Mother was residing at a domestic violence shelter at the time of the TPR hearing, she had no "stable" housing available, one of the requirements of her case plan. According to the PPW, Mother's visitations with A.M. were sporadic, including in the months preceding the TPR hearing. The district court, in its role as the fact-finder, was free to weigh the evidence of Mother's progress against the likelihood that she would reach a point where she would be capable of parenting Children. *See State ex rel. Children, Youth & Families Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 19, 141 N.M. 299, 154 P.3d 674 (stating that appellate courts "employ a narrow standard of review and do not re-weigh evidence."); *see also State ex rel. Children, Youth & Families Dep't v. Browind C.*, 2007-NMCA-023, ¶ 40, 141 N.M. 166, 152 P.3d 153 (holding that "[p]arents do not have an unlimited time to rehabilitate and reunite with their children"). Based on the foregoing, we conclude that substantial evidence, of a clear and convincing nature, supported the district court's order finding that the causes and conditions that brought Children into CYFD custody were unlikely to change in the foreseeable future.

**{11}** We now turn to Mother's challenge of the district court's futility finding. "The district court may excuse the reasonable efforts requirement when there is a clear showing that the efforts would be futile[.]" *State ex rel. Children Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 40, 421 P.3d 814 (internal quotation marks and citation omitted); *see* § 32A-4-28(B)(2)(a) ("The court may find in some cases that efforts by [CYFD] are unnecessary, when . . . there is a clear showing that the efforts would be futile[.]"). Viewing the evidence in the light most favorable to the judgment, we conclude CYFD presented substantial evidence, of a clear and convincing nature, that CYFD's efforts to assist Mother would be futile.[2] From April 2018, when Mother pleaded no

---

1Mother was unable to attend any family therapy session for C.M. because he did not have a counselor until the time of the final hearing.

2Because Mother challenges her TPR, we consolidate both issues and apply the substantial evidence standard to the futility finding. *See State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 22, 128 N.M.

contest to neglecting Children to the futility finding in December 2018, an eight month period, Mother "made little progress in her case plan," and still needed to make progress in "all areas[.]" During this period, CYFD made numerous referrals for Mother to attend counseling and treatment, which Mother failed to complete. Mother was referred to Tammy Dean for domestic violence counseling and only attended once prior to 2019. Mother failed to attend her scheduled appointment with Dr. Amalia Humada-Ludeke, an individual counselor, and also failed to attend substance abuse treatment. Additionally, Mother cancelled her first two appointments, failed to attend her scheduled group session, and never rescheduled appointments with Take Action Counseling in October 2018. Mother's drug testing was "not consistent," and she tested positive for methamphetamine prior to the futility finding. Thus, we conclude substantial evidence, of a clear and convincing nature, supports the district court's finding that CYFD's efforts to assist Mother would be futile.

**CONCLUSION**

**{12}**   For the foregoing reasons, we affirm.

**{13}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**

---

107, 997 P.2d 883 (stating as both the district court's findings regarding futility and termination of parental rights "concern the sufficiency of the evidence to support the trial court's decision to terminate [the m]other's parental rights, we consolidate them for consideration under the standard of review applicable at termination proceedings").