This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39612

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Plaintiff-Appellee,

v.

**DANIEL O.,**

Respondent-Appellee,

and

**ALEXIS L.,**

Respondent,

**IN THE MATTER OF GABRIEL O.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Emilio J. Chavez, District Judge**

Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Crollett & McDowell, P.A.
Marissa Crollett
Albuquerque, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**     Respondent (Father) appeals from the district court's order terminating his parental rights to Child. In this Court's notice of proposed disposition, we proposed to summarily affirm. Father filed an amended memorandum in opposition, which we have duly considered. For the reasons articulated below, we affirm the district court's order terminating Father's parental rights to Child.

**{2}**     Father raises three arguments in his amended memorandum in opposition: (1) Father did not abuse or neglect Child; (2) the district court erred in entering a futility finding; and (3) the Children, Youth & Families Department (CYFD) did not show that Father would not ameliorate the causes and conditions of neglect in the foreseeable future. [AMIO 5, 7, 12] Issues one and two were not raised in Father's docketing statement and therefore, we construe their inclusion in the memorandum in opposition as a motion to amend the docketing statement. *See* Rule 12-208(F) NMRA (permitting the amendment of the docketing statement based upon "good cause shown"); *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309 (setting out requirements for a successful motion to amend the docketing statement). The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are: "(1) that the motion be timely, (2) that the new issue sought to be raised was either (a) properly preserved below or (b) allowed to be raised for the first time on appeal[,]" and (3) "that the issues raised are viable." *State v. Moore*, 1989-NMCA-073, ¶ 42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730. Given the absence of an explanation as to why these arguments were not originally made in his docketing statement, and the fact that, as explained below, these arguments are not viable, we deny Father's motion to amend the docketing statement.

**{3}**     First, Father argues that he did not abuse or neglect Child as was adjudicated by the district court. [AMIO 5] Father states that Child's "alleged lack of response to the presence of a police officer, as well as [Child's] alleged lack of response to Father's being 'very agitated and loud' at a meeting is per se insufficient to sustain a claim of abuse or neglect." [AMIO 5] Father argues that the only underlying basis for the abuse and neglect finding is that Father demonstrates mental illness, which is improper. [AMIO 6] *See State ex rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶¶ 28, 30, 137 N.M. 687, 114 P.3d 367 ("[N]eglect may not be viewed as the automatic result of a person's status. . . . An unfavorable personal status, such as low IQ, poverty, mental illness, incarceration, prior convictions, or addiction, is therefore relevant only to the extent that it prompts either the harms defined as abuse, or the neglect which is

defined as the failure to provide proper parental care and control or an inability to discharge his responsibilities to and for the child." (internal quotation marks and citations omitted)). However, certain statuses, "particularly if extreme in nature, may well lead to neglect or abuse as defined by the [Abuse and Neglect] Act," and this Court emphasizes "that the focus should be on the acts or omissions of the parents in their caretaking function and not on apparent shortcomings of a given parent due to his or her unfavorable status." *Id.* ¶ 30. Pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2018), a "neglected child" is defined as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent," or "the failure or refusal of the parent . . . when able to do so, to provide them[.]"

**{4}** The district court found that Father's "untreated mental health issues have negatively impacted [Child's] psychological well[-]being [and] created a threat to [Child's] physical and psychological safety." [1 RP 192 ¶ z] The district court reasoned that the director of the Taos Infant Mental Health Team testified to Child's behavior on the lapel video and noted that Child was frightened and had "learned to mute his cues" despite the fact that Father was being agitated and loud. [1 RP 181-82 ¶¶ w-x] The director also testified that she saw Child's muted behavior when Father was loud and agitated in a team meeting with CYFD in January or February 2020. [1 RP 182 ¶ y] Viewing the evidence in the light most favorable to the judgment, we determine that there was substantial evidence to support the district court's decision that Child was neglected. *See State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859 ("Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." (internal quotation marks and citation omitted)). While Father is correct in asserting that his mental health status alone does not support a charge of abuse and neglect, here, the district court's ruling was not based on his mental health status. Instead, the district court found that Father's failure to seek treatment for his mental health issues was impacting Child's psychological well-being, as demonstrated by his muted cues when Father was loud and agitated.

**{5}** Second, Father argues that the district court erred as a matter of law in entering a futility finding based on the fact that CYFD "made reasonable efforts with these parents for the past three years," in providing for reunification of Father with Child's sibling. [1 RP 187] Supporting this argument, Father contends there is no case law allowing the district court to base a futility finding on the fact that Father failed to take advantage of CYFD's reasonable efforts for reunification with Child's sibling that would "support a futility finding with regard to any new efforts to assist Father to reunify with [Child]." [AMIO 9]

**{6}** Under NMSA 1978, Section 32A-4-22(C) (2016), after a child is found to be neglected or abused, a court may determine that reasonable efforts are not required to be made by CYFD when the district court finds that "(1) the efforts would be futile; or (2) the parent, guardian or custodian has subjected the child to aggravated circumstances." We review a district court's determination to relieve CYFD of its obligation to provide

reasonable reunification efforts for an abuse of discretion. *See State ex rel. Child., Youth & Fams. Dep't. v. Browind C.*, 2007-NMCA-023, ¶ 44, 141 N.M. 166, 152 P.3d 153.

**{7}** Father has failed to cite to any authority indicating that a futility finding cannot be based on a parent's failure to take advantage of CYFD's services provided according to a case plan aimed at reunification with another child. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). The district court found in its dispositional order that CYFD provided Father with more than reasonable efforts for over three years "for the same causes and concerns that are barriers to [Father's] ability to safely parent" and Father "has been resistant to services and has not made meaningful progress on mitigating these barriers." [1 RP 186 ¶ 8] When Child was placed in Father's custody in October 2019, he was already court ordered to participate in mental health services and the infant mental health team program. [1 RP 179-80 ¶ k] Father was also referred to the CYFD in-home services program and Los Angelitos early childhood services for Child in October 2019, in addition to the services already being provided for reunification with Child's sibling. [1 RP 180 ¶ l] The infant mental health team became unwilling to provide services to Father in November 2019 as a result of his agitated and hostile interactions with a team member. [1 RP 181 ¶ t] He was also unsuccessfully discharged from in-home services due to his lack of participation and his lack of progress in his treatment goals. [Id.] Given the above, Father has not demonstrated that the district court abused its discretion in determining that future assistance from CYFD would have been futile. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (explaining that the appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the trial court erred).

**{8}** Furthermore, as Father stated in his docketing statement, despite the district court's futility finding in its August 5, 2020 dispositional order, the district court ordered a case plan for Father. [DS 3; 1 RP 186] As explained in our notice of proposed disposition, Father's case plan primarily focused on mental health diagnosis and treatment. [CN 5] Interestingly, Father's memorandum in opposition states that "[t]here was never a treatment plan for Father that included *any* responsibility by [CYFD] to provide reasonable efforts." [AMIO 8] While we recognize that Father only had approximately four months to work the case plan implemented in this case, as explained above, Father also received extensive services from CYFD in the case related to Child's sibling that Father failed to utilize or underutilized. [2 RP 315 ¶ 11] The district court also found that during the four months he had to work his case plan, Father began attending therapy, "but no progress or verification regarding [Father's] progress was provided to the court" and Father's testimony at the termination of parental rights hearing "did not demonstrate significant understanding of the reasons that [C]hild came into custody beyond blaming" Child's mother. [2 RP 314 ¶ 10]

**{9}** Lastly, Father argues that CYFD did not provide substantial evidence that he would not ameliorate the causes and conditions of neglect in the foreseeable future

because Child "was taken into custody on February 28, 2020 [and y]et the [d]istrict [c]ourt terminated parental rights on February 5, 2021, less than one year after [CYFD] took custody." [AMIO 13] Father reasons that the one year of services provided by CYFD was unreasonable because it was "less than the fifteen months that this Court considered 'reasonable' in *Patricia H.*" [AMIO 13]

**{10}** Termination of parental rights is appropriate when

> the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

NMSA 1978, § 32A-4-28(B)(2) (2005). "A motion to terminate parental rights may be filed at any stage of the abuse or neglect proceeding by a party to the proceeding." NMSA 1978, § 32A-4-29(A) (2009). "We have interpreted the term 'foreseeable future' to refer to corrective change within 'a reasonable definite time or within the near future.'" *Patricia H.*, 2002-NMCA-061, ¶ 34. "Because it is important for children to have permanency and stability in their lives, termination proceedings should not continue indefinitely." *State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266.

**{11}** To the extent Father argues that he was entitled to at least fifteen months of assistance from CYFD, as explained above, Father received at least three years of services and his "performance on his treatment plans in both cases over a three-year period provided substantial support that the conditions that led to the abuse and neglect were not likely to change in the foreseeable future." [2 RP 314 ¶ 9] Furthermore, CYFD was not required to provide reasonable efforts in this case as a result of the futility finding made by the district court, and therefore, the fifteen-month guideline used to "assess the duration of reasonable efforts under state law" does not apply here. *See Patricia H.*, 2002-NMCA-061, ¶ 26.

**{12}** Importantly, as we noted in our notice of proposed disposition, there was expert witness testimony presented at the termination of parental rights hearing regarding the fact that Father's circumstances related to his mental health limitations are not likely to change and that Father "may not be able to make the changes necessary to rectify the causes and conditions of the neglect and abuse so as to enable the court to conclude that the parent is able to properly care for the child." *State ex rel. Child. Youth & Fams. Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 140 N.M. 390, 142 P.3d 978 (stating that "compliance with the terms of a treatment plan is not dispositive of the issue of parental termination"). Father has pointed us to no additional facts or law in his memorandum in opposition to convince us that the district court erred in determining that the causes and conditions which led to Child's abuse and neglect were likely to change in the foreseeable future. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

**{13}** Beyond these arguments, Father raises no new facts, authority, or arguments in his memorandum in opposition to persuade this Court that our notice of proposed disposition was incorrect. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.") Accordingly, for the reasons set forth in our notice of proposed disposition and herein, we affirm the district court's termination of Father's parental rights.

**{14}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**