2003-NMCA-017

61 P.3d 845

**STATE of New Mexico, ex rel. CHIL-
DREN, YOUTH & FAMILIES DE-
PARTMENT, Petitioner–Appellee,**

v.

**AMY B., Respondent–Appellant,**

and

**In the Matter of Marcus
Devon M., a Child.**

No. 22,432.

Court of Appeals of New Mexico.

Sept. 17, 2002.

Angela L. Adams, Chief Children's Court
Attorney, Daniel J. Pearlman, Children's
Court Attorney, Santa Fe, NM, for Appellee.

Nancy L. Simmons, Albuquerque, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} This case involves NMSA 1978, §§ 32A–4–2(C), –22(C), and –28(B) (1999), which were passed in response to the Adoption and Safe Families Act, 42 U.S.C. § 671(a)(15)(D) (1997), and which delineate the circumstances under which the State need not undertake reasonable efforts to reunite the family prior to terminating a parent's parental rights. Mother contends that the statutes were unconstitutionally applied to her and that her attorney rendered ineffective assistance of counsel in failing to object to their application in the circumstances of this case. We disagree and affirm.

## LEGAL BACKGROUND

{2} Ordinarily, except in cases of actual or presumptive abandonment under Section 32A–4–28(B)(1) or (3), parental rights may not be terminated in the case of a neglected or abused child unless the court finds that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." Section 32A–4–28(B)(2). However, Section 32A–4–28(B)(2) goes on to provide that:

> The court may find in some cases that efforts by the department or another agency are unnecessary, when:
>
> (a) there is a clear showing that the efforts would be futile;
>
> (b) the parent has subjected the child to aggravated circumstances; or
>
> (c) the parental rights of the parent to a sibling of the child have been terminated involuntarily[.]

Section 32A–4–2(C) provides that:

> "aggravated circumstances" include those circumstances in which the parent, guardian or custodian has:
>
> (1) attempted, conspired to cause or caused great bodily harm to the child or

great bodily harm or death to the child's sibling;

> (2) attempted, conspired to cause or caused great bodily harm or death to another parent, guardian or custodian of the child;
>
> (3) attempted, conspired to subject or has subjected the child to torture, chronic abuse or sexual abuse; or
>
> (4) had his parental rights over a sibling of the child terminated involuntarily[.]

To a like effect, Section 32A–4–22(C) ordinarily provides that a disposition of adjudicated neglected or abused children shall include a treatment plan for the parents outlining reasonable efforts at reunification of the family; however, such is not required under circumstances virtually identical to those listed in Section 32A–4–28(B)(2). It appears that Section 32A 4 2(C)(4) is somewhat redundant in that Sections 32A–4–22(C) and –28(B)(2) list both aggravated circumstances and termination of rights to a sibling, which is one of the aggravated circumstances, as independent reasons why reasonable efforts at treatment and reunification of the family are not required. That redundancy does not concern us in this case, however, because the termination of parental rights to a sibling triggers the elimination of the requirement of reasonable efforts, whether it does so in its own right or as a definitional element of aggravated circumstances.

## FACTS

{3} In 1998, Mother's parental rights to her first two children were terminated due to Mother's drug abuse, which caused her to neglect and abuse these children, and due to her inability to change her habits that led to the neglect and abuse despite reasonable efforts of the Department to assist her. In the beginning of 2000, Mother was serving a sentence for forging checks to obtain money to buy drugs. She was paroled in March 2000 and almost immediately got pregnant with the child at issue (Child). Her parole was revoked in July for failure to report to authorities, and she returned to prison. She was released from prison in October 2000 and began using drugs again. After a three-

day drug binge using crack cocaine, Mother gave birth to Child one month early, on November 12. Mother was 22 years old at the time. Child was born with cocaine in his system. Mother was rearrested for dirty urine and failure to appear and was returned to prison.

{4} An abuse/neglect petition was filed a few days after Child's birth. It specifically alleged that Mother had had her parental rights to Child's siblings terminated and referenced Section 32A–4–2(C)(4), which is the statute that makes such fact an aggravated circumstance. Mother pleaded no contest to the petition at an adjudicatory hearing on January 18, 2001. At the time of the adjudicatory hearing, the trial court advised Mother that her parental rights could be terminated if she "failed to work a treatment plan."

{5} There were two dispositional hearings. At the first one, on February 15, the Department asked the trial court to exercise its discretion under Section 32A–4–22 and not order a treatment plan due to the prior termination of Mother's parental rights to Child's siblings. Mother asked the trial court for more time, and the dispositional hearing was continued to March 1. Mother never sought to withdraw her no-contest plea, and only asked the trial court not to exercise its discretion to relieve the Department of making reasonable efforts. The trial court's disposition nonetheless did relieve the Department of that burden. However, nothing precluded Mother from making efforts on her own behalf in an attempt to alleviate the conditions that led to the abuse and neglect, although Mother continued to be incarcerated.

{6} Following the March 1 dispositional hearing, the Department moved to terminate parental rights on the grounds that Child was neglected or abused, that Mother had previously had parental rights terminated, that Mother had been unable since the prior termination to address the drug abuse that caused her to abuse and neglect her children, and that Child was in need of a stable caregiver. At and following the termination hearing in April 2001, Mother took the position that she had reformed, that she was now admitting problems with drug abuse, that she

only needed more time, and that therefore there was not clear and convincing evidence that the causes and conditions of neglect were unlikely to change in the foreseeable future. The trial court found that Child was neglected and abused, and that aggravated circumstances existed because Mother's parental rights to Child's siblings had been terminated. However, the trial court also found and concluded that Mother had had four years to correct her substance abuse problems, that she had not made sufficient progress, that it was shown by clear and convincing evidence that Mother was unable to remedy the causes of the abuse and neglect of Child within the foreseeable future, and that it was in the best interests of Child to terminate Mother's parental rights.

## DISCUSSION

{7} Prior to the enactment of the Adoption and Safe Families Act, both state and federal law appeared to give primary consideration to the rights of the parents, as opposed to the welfare of their children. Both our statute, in Sections 32A–4–22(C) and –28(B) (prior to the 1999 amendments), and the federal statute (effective October 1, 1983, until 1997) required a showing of reasonable efforts at family reunification in all cases. Our statute required this before parental rights could be terminated, and the federal statute required it as a condition of eligibility for federal funding benefits. The 1997 Adoption and Safe Families Act, in eliminating the requirement of reasonable efforts under certain circumstances, and in requiring the states to follow suit in order to be eligible for federal benefits, was responding to perceived excesses in the application of the reasonable efforts requirement. See *In re Custody & Guardianship of Marino S.*, 181 Misc.2d 264, 693 N.Y.S.2d 822, 825 (Fam.Ct.1999). As stated in the legislative history of the federal provision:

> There seems to be almost universal agreement that adoption is preferable to foster care and that the nation's children would be well served by a policy that increases adoption rates.... [H]owever, ... there are a variety of barriers to adoption.... One barrier is the "reasonable efforts" criterion in the Federal statute.

[T]here seems to be a growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. As a result, too many children are subjected to long spells of foster care or are returned to families that reabuse them.

H.R.Rep. No. 105–77, at 8 (1997), reprinted in 1997 U.S.C.C.A.N. (111 Stat. 2115) 2739, 2740. Accordingly, the federal statute removed the requirement of reasonable efforts when there are aggravated circumstances, such as torture or sexual abuse, and also removed the requirement of reasonable efforts when there is a homicide of a child or when the parent has had parental rights to another child terminated. *Id.* Our state has conformed the New Mexico statutes to the federal requirements in Sections 32A–4–2(C), –22(C), and –28(B).

{8} We understand Mother's argument on appeal to have several components. First, she argues that she was harmed by two procedural aspects of the case: (1) that her plea was involuntary or not knowing because at the time she pleaded no contest to the allegations of abuse and neglect, she thought the Department would be required to engage in reasonable efforts and (2) that her attorney was ineffective because he did not raise any constitutional issues below or in the docketing statement, but instead simply argued that the trial court should not, in its discretion, eliminate the requirement of reasonable efforts. We address these issues summarily.

■ {9} Mother never moved to revoke or withdraw her plea, even when she learned that the trial court was not going to require the Department to engage in any efforts. Mother also did not appeal the dispositional order. Thus, Mother waived any issue concerning an involuntary or unknowing plea. Cf. *State v. Lozano,* 1996–NMCA–075, ¶ 18, 122 N.M. 120, 921 P.2d 316 (indicating that a person cannot withdraw a guilty plea unless the person proves that information supposedly missing was actually relevant to the decision to plead); *State v. Madrigal,* 85 N.M. 496, 500, 513 P.2d 1278, 1282 (Ct.App.1973) (indicating that voluntariness of plea cannot be raised for the first time on appeal). With regard to the constitutional issues, we are addressing them in this first case to reach our Court involving the constitutionality of the Adoption and Safe Families Act. See Rule 12–216(B)(1) NMRA 2002 (permitting appellate court in its discretion to consider issues of substantial public interest not raised in trial court). Thus, because these constitutional questions are of first impression in New Mexico and because we find them here to be without merit, we hold that Mother was not prejudiced by her counsel's failure to raise them in this case. See *State v. Chandler,* 119 N.M. 727, 735, 895 P.2d 249, 257 (Ct.App.1995) (holding that actions of counsel in failing to raise an issue are not prejudicial when the issue has no merit).

■ {10} Second, Mother complains that the 1999 reasonable efforts amendments, both on their face and as applied to her, violate due process because (1) they eliminate a required burden of proof by clear and convincing evidence, (2) they eliminate the necessity of specifically proving that reasonable efforts would actually be futile, and (3) they allow the use of stale evidence, i.e., once a parent's rights are terminated to one child, no matter how long ago, termination at the present time is a foregone conclusion because of the elimination of the reasonable efforts requirement. We understand Mother's first argument to be a contention that the due process requirement of clear and convincing evidence established by *Santosky v. Kramer,* 455 U.S. 745, 753–54, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), is violated. We understand Mother's second and third arguments to be a contention that due process is violated because the statute creates an irrebuttable presumption that is overbroad and dramatically increases the risk of erroneous deprivations of parental rights, which would be contrary to *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{11} We do not agree with any of Mother's contentions. The recent amendments to the statute do not change the basic standard for termination of parental rights when children are neglected or abused. Before the amendments, the State was, and after the amendments, the State still is, required to prove

that the children are neglected or abused and "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future." Section 32A–4–28(B)(2). These are the facts that the trial court found to be proved by clear and convincing evidence without regard to any presumptions. In fact, Mother's brief on appeal does not contend that these facts were not proved by clear and convincing evidence.

{12} Mother does argue that the State failed to prove aggravated circumstances by clear and convincing evidence. Assuming that she is correct that the burden of proving aggravated circumstances is by clear and convincing evidence, we hold that the burden was met here. Aggravated circumstances, by definition, include prior termination of parental rights to other children. Section 32A–4–2(C)(4). Mother admitted in her pleadings that her parental rights were terminated as to two other children. When a parent admits that parental rights were previously terminated, this admission constitutes clear and convincing evidence of that fact. See *In re Baby Boy H.*, 63 Cal.App.4th 470, 73 Cal.Rptr.2d 793, 797 (1998). In addition, the previous judgment is part of the record on appeal, and there is no dispute about the fact that Mother's parental rights to Child's siblings were terminated. The real issue on appeal is the effect of that previous termination, and it is to that issue that we now turn.

{13} Several of our sister states have had occasion to rule on the constitutionality of state statutes passed in response to the Adoption and Safe Families Act. See, e.g., *Baby Boy H.*, 73 Cal.Rptr.2d at 797–99; *In re Sheneal W. Jr.*, 45 Conn.Supp. 586, 728 A.2d 544, 550–52 (1999); *G.B. v. Dearborn County Div. of Family & Children*, 754 N.E.2d 1027, 1032 (Ind.Ct.App.2001); *In re Heather C.*, 2000 ME 99, ¶¶ 20–32, 751 A.2d 448. Although not all of the cases have been in the same context as this case, all have ruled that the statutes are constitutional in the face of arguments similar to Mother's, and we have been directed to no cases containing any contrary ruling.

{14} We particularly agree with the reasoning of the Maine Supreme Judicial Court, which analyzed its statute utilizing the same factors that we frequently use in these cases. See, e.g., *State ex rel. Children, Youth & Families Dep't v. Anne McD.*, 2000–NMCA–020, ¶ 18, 128 N.M. 618, 995 P.2d 1060 (citing the factors established in *Mathews*, 424 U.S. at 335, 96 S.Ct. 893). The court there recognized both the private parties' fundamental rights to rear their children and the state's substantial interest in protecting the safety and welfare of children. *Heather C.*, 2000 ME 99, ¶¶ 25–27, 751 A.2d 448. Like the New Mexico statute, the Maine statute relies on past adjudications to support the elimination of the requirement of state services geared toward reunification of the family. The mother there argued that the statute produced a high risk of erroneous deprivations of individual rights because the statute did not require a proven connection between the past orders and the parents' current abilities. *Id.* ¶ 24. In rejecting this argument, the court focused on the discretionary nature of the statute. *Id.* ¶ 25. The Maine statute, like ours, does not mandate that the state cease reasonable efforts once there has been a prior termination of parental rights. The statute, like ours, provides the trial court with discretion to relieve the state of the burden of providing services. Section 32A–4–22(C), governing dispositions, states, "The court may determine that reasonable efforts are not required to be made when the court finds that: (1) the efforts would be futile; (2) the parent ... has subjected the child to aggravated circumstances; or (3) the parental rights ... to a sibling ... have been terminated involuntarily." (Emphasis added.) Similarly, Section 32A–4–28(B)(2), stating the elements of termination for abuse or neglect, states,

> The court may find in some cases that efforts by the department or another agency are unnecessary, when: (a) there is a clear showing that the efforts would be futile; (b) the parent has subjected the child to aggravated circumstances; or (c) the parental rights ... to a sibling ... have been terminated involuntarily[.]

(Emphasis added.)

{15} Moreover, there is an additional safeguard—the appellate court can review the

trial court's exercise of discretion. *Heather C.*, 2000 ME 99, ¶ 26, 751 A.2d 448. Thus, Mother's hypothetical argument in the present case lacks merit. Mother argues that a person who had parental rights terminated long in the past and who is now a model parent could have her rights terminated under the New Mexico statute solely on the basis of those ancient activities. However, we think that an appellate court would likely find that a trial court abused its discretion if it terminated the parental rights of a person who is now a model parent solely on the basis of a parental rights termination that occurred long ago if there is no suggestion of any relationship between the past conduct and the current abilities.

{16} In this case, and indeed in most of the reported cases, there is a very real relationship between the past conduct and the current abilities. As stated in *Baby Boy H.*, 73 Cal.Rptr.2d at 799:

> Before this subdivision applies, the parent must have had at least one chance to reunify with a different child through the aid of governmental resources and fail to do so. Experience has shown that with certain parents, as is the case here, the risk of recidivism is a very real concern. Therefore, when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful.

To a like effect, in upholding the constitutionality of a similar statute, the Indiana court applied strict scrutiny and stated, "the statute is narrowly tailored" and no "more intrusive than necessary to protect the welfare of children." *G.B.*, 754 N.E.2d at 1032. We reasoned similarly in *In re I.N.M.*, 105 N.M. 664, 668–69, 735 P.2d 1170, 1174–75 (Ct.App. 1987) (holding that a court can reasonably infer abuse of one child from abuse of another).

■ {17} It cannot be disputed that the state has a substantial interest in protecting children. *Heather C.*, 2000 ME 99, ¶¶ 27–28, 751 A.2d 448. Also, particularly in these economic times, it bears remembering that government resources are limited, and the state "has a legitimate interest in making the best use of its limited resources." *Id.* ¶ 29.

"If difficult decisions regarding allocation of scarce resources must be made, the Legislature's determination that a prior involuntary termination is a factor to be considered is both reasonable and legitimate." *Id.*

{18} Here, despite having had her rights to two children terminated for abuse and neglect caused by substance abuse only two years previously, Mother continued to abuse drugs, causing her to deliver Child prematurely and causing her reimprisonment and resultant inability to act as a responsible parent. The trial court could have easily found her alleged recognition of her problems to be "too little, too late." *State ex rel. HSD v. Dennis S.*, 108 N.M. 486, 488, 775 P.2d 252, 254 (Ct.App.1989). This is not a case in which Mother's parental rights to Child were terminated based on old evidence, not relevant to current proceedings. The trial court found, by clear and convincing evidence, that Mother's prospects for change in the foreseeable future were not good. This finding was not based solely on past adjudications. The only thing the past adjudication did was relieve the State of the burden of engaging in reasonable efforts and relieve the State of the burden of proving that such efforts would not result in change. The State still had to prove that the conditions and causes of the abuse and neglect would not change in the foreseeable future, and Mother does not challenge the sufficiency of the evidence supporting the trial court's finding of this fact.

{19} We conclude that Sections 32A–4–2(C), –22(C), and –28(B)(2) are constitutional facially and as applied to Mother. We further conclude that the trial court did not abuse its discretion in relieving the Department of its obligation to make reasonable reunification efforts.

## CONCLUSION

{20} We affirm the termination of Mother's parental rights to Child.

{21} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and RODERICK T. KENNEDY, Judges.