**Certiorari Granted, May 24, 2013, No. 34,127**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-061**

**Filing Date:  March 26, 2013**

**Docket No. 31,869**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,**

**Petitioner-Appellee,**

**v.**

**RAQUEL M.,**

**Respondent-Appellant,**

**IN THE MATTER OF ANGEL N., n/k/a
CISCO N.,**

**Child.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY
Charles C. Currier, District Judge**

Children, Youth & Families Department
Oneida L'Esperance, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

Pittman Law Firm, P.C.
Judy A. Pittman

Roswell, NM

Guardian ad Litem

**OPINION**

**SUTIN, Judge.**

**{1}**     Raquel M. (Mother) appeals the district court's judgment terminating her parental rights to Angel N., now known as Cisco N. (Child).  Based upon its finding that Child had been subjected to aggravated circumstances—specifically, that Mother's parental rights to Child's sibling had previously been terminated—the district court relieved the Department of its obligation to make further reasonable efforts to reunify the family.  Mother contends that because the prior termination was the subject of a pending appeal in this Court, her right to due process was violated by the aggravated circumstances finding.  We conclude that Mother's due process rights were not violated, and we affirm.

**LEGAL BACKGROUND**

**{2}**     When a child is found to be neglected or abused, the district court must order the Children, Youth and Families Department (the Department) to design and implement a treatment plan that reflects "reasonable efforts" on behalf of the Department to preserve and reunify the family.  NMSA 1978, § 32A-4-22(C) (2009); *see also State ex rel. Children, Youth & Families Dep't v. Amy B.*, 2003-NMCA-017, ¶ 2, 133 N.M. 136, 61 P.3d 845 (explaining that the treatment plan shall outline the Department's reasonable efforts to reunify the family).  Subject to court approval of the treatment plan, the child's parent is ordered to cooperate with its dictates.  Section 32A-4-22(C).  In some circumstances, however, the court may relieve the Department of its obligation to employ reasonable efforts at reunification, including its obligation to implement a treatment plan.  *Id.*  One such circumstance is a finding, by the court, that the parent has subjected the child to aggravated circumstances.  Section 32A-4-22(C)(2).  By definition, "aggravated circumstances" includes those circumstances in which the parent has had parental rights over a sibling of the child terminated involuntarily.  NMSA 1978, § 32A-4-2(C)(4) (2009).

**{3}**     A finding of aggravated circumstances also plays a role in the termination of parental rights.  "The Children's Code gives the [district] court the authority to terminate the parental rights of an abusive or neglectful parent."  *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 18, 133 N.M. 827, 70 P.3d 1266.  Ordinarily, the court may not terminate parental rights unless the court determines "that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future *despite reasonable efforts by the [D]epartment . . .* to assist the parent in adjusting the conditions that render the parent unable to properly care for the child."  NMSA 1978, § 32A-4-28(B)(2) (2005) (emphasis added).  In cases where the parent has subjected the child to aggravated circumstances, however, the district court may find that efforts by the Department are

2

unnecessary. Section 32A-4-28(B)(2)(b). Under those circumstances, where the Department is excused of its reasonable-efforts obligation, in order to succeed on a motion to terminate parental rights, the Department must still prove that the conditions and causes of the abuse and neglect would not change in the foreseeable future. *Amy B.*, 2003-NMCA-017, ¶ 18.

**FACTS**

**{4}** On December 16, 2010, the district court entered a judgment terminating Mother's parental rights to a sibling of Child. Mother appealed the December 16 judgment to this Court. *See In re Isiah M.*, No. 31,057, slip op. (N.M. Ct. App. March 27, 2012). On February 4, 2011, while Mother's appeal to this Court was pending, the Department filed an abuse and neglect petition alleging that Mother had abused and/or neglected Child.[1]

**{5}** The abuse and neglect petition alleged the following facts in support of its request that the district court find that Child was neglected and/or abused. On January 31, 2011, the Department responded to an emergency law enforcement referral alleging physical neglect of Child. Law enforcement had entered a residence due to outstanding warrants for the adult residents. When they entered the residence, the officers "observed what they believed to be adults trying to place [Child, who was less than three months old at the time] into a hole in the floor." There was drug paraphernalia throughout the residence. Mother was arrested pursuant to outstanding warrants. Child was taken into the custody of the Department. As of the filing date of the petition, Mother was incarcerated. Based on a mouth swab, Child tested positive for methamphetamine, indicating that Child had been exposed to the drug within thirty-six hours prior to being tested.

**{6}** The petition also alleged that Mother had subjected Child to aggravated circumstances based on the December 16, 2010, judgment that terminated her parental rights to Child's sibling, Isiah. Owing to the aggravated circumstance of the December 16, 2010, termination of Mother's parental rights to Isiah, the Department requested to be relieved of its obligation to make reasonable efforts to preserve and reunify the family as to Child, pursuant to Section 32A-4-22(C)(2).

**{7}** Also on February 4, 2011, the Department filed its affidavit in support of an ex parte custody order. In greater detail and with additional facts, the affidavit essentially expanded upon the facts presented in the abuse and neglect petition. Among other facts, the affidavit alleged that there was a bottle, a blanket, and a cell phone in one of two holes in the floor. Further, law enforcement officers were said to have observed a marijuana pipe and two methamphetamine pipes in the living room, as well as a purse containing foil and plastic baggies, which the officers suspected to be related to drugs. Mother had approximately fifteen warrants for her arrest.

---

[1] The abuse and neglect petition also pertained to Child's father who is not a party to this appeal.

**{8}** On February 7, 2011, the district court filed an ex parte custody order, mandating that Child remain in the Department's custody "until further order of the [c]ourt." On March 8 and April 19, 2011, the district court held an adjudicatory hearing on the Department's abuse and neglect petition. In its disposition order, the court found by clear and convincing evidence that Mother's parental rights to a sibling of Child's had been involuntarily terminated on December 16, 2010. Based on that prior termination of parental rights, the district court found aggravated circumstances as to Mother. The court also found that "further treatment efforts by [the Department] would be futile"; accordingly, the court relieved the Department of making further efforts to work a treatment plan with Mother.

**{9}** On May 17, 2011, the district court held an initial permanency hearing. The court noted that owing to its April 19 finding of aggravated circumstances, it had relieved the Department of making reasonable efforts and implementing a treatment plan. The court found that "[t]he permanency plan proposed by the Department is adoption[,]" which plan the court found appropriate. The court ordered that Child's permanency plan would be adoption.

**{10}** On July 11, 2011, the Department moved to terminate Mother's parental rights to Child. In its motion, the Department stated that the "facts and circumstances supporting . . . termination" were that Child was subjected to aggravated circumstances in that the parental rights to a sibling had been terminated involuntarily and that termination of parental rights would promote the physical, mental, and emotional welfare needs of Child.

**{11}** A hearing on the Department's motion to terminate Mother's parental rights was held on September 23, 2011. On October 20, 2011, the district court entered its decision to terminate Mother's parental rights. On appeal, Mother does not challenge the district court's factual findings. In pertinent part, those findings included that Mother has a chronic illegal drug abuse problem; Mother's parental rights were involuntarily terminated in regard to Isiah; when Child was taken into Department custody, "he had a high level of methamphetamine in his system"; and Mother had been "in and out of jail since the beginning of this case." Specifically, the court found that Mother was incarcerated from January 31, 2011, through early May 2011; and on September 13, 2011, Mother was arrested again for allegedly violating the conditions of her probation.

**{12}** The court found that after Mother was released from jail in early May 2011, she requested visitation with Child, and while she was incarcerated, she had some limited visitation, but none after May 17, 2011, and beyond her initial request for visitation, Mother made no further contact with the Department. The court also found that Mother took advantage of services that were available to her during her January to May 2011 incarceration, but after her release she did nothing to eliminate the causes and conditions that brought Child into custody. In the court's view, those causes and conditions included:

     A.     Mother has never had a home.

B. Mother has never had employment.

C. Mother continues to use illegal drugs (the alleged probation violation is for the use of illegal drugs).

D. Mother has never entered, let alone completed, any drug treatment plan.

E. Mother did not follow up on working on her GED.

In addition, the court found that "[t]he only progress Mother has ever made has been when she has been incarcerated[,]" and it is unknown when Mother will be released from incarceration. Based on the foregoing facts, the court concluded that "[t]he conditions and causes of the neglect and abuse that brought Child [into] custody are unlikely to change in the foreseeable future."

{13} The court also entered findings of fact and conclusions of law in regard to Child's interests. The court found that Child had been in the care of foster parents since Child was taken into the Department's custody, and the foster parents wished to adopt Child. The court found that Child had bonded with the foster parents in a parent/child relationship. And the court concluded that it was in the best interest of Child to have Mother's parental rights terminated and Child made available for adoption.

{14} In accordance with its findings of fact and conclusions of law, the court concluded that Mother's rights would be terminated pursuant to Section 32A-4-28(B)(2). On November 22, 2011, the court, referencing its October 20 decision, entered its judgment terminating Mother's parental rights. On March 27, 2012, this Court entered a Decision affirming the termination of Mother's parental rights to Child's sibling. *See In re Isiah M.*

{15} Mother appeals from the district court's judgment terminating her parental rights to Child. On Appeal, Mother argues that she was deprived of due process when the district court found aggravated circumstances based upon the earlier termination of her parental rights, when that case had yet to be resolved on appeal. She also argues that the Legislature did not intend to authorize termination of parental rights based on aggravated circumstances when the prior termination of parental rights judgment is pending on appeal.

{16} We conclude that the statutory procedures employed in the district court provided protection against the risk of an erroneous deprivation of parental rights, even with a finding of aggravated circumstances, and even when there existed a possibility the foundational judgment supporting that finding could be reversed on appeal. And we do not believe that additional or substitute procedural safeguards are required. Also, we reject Mother's legislative intent argument. We affirm.

**DISCUSSION**

5

**Mootness**

**{17}** As an initial matter, we reject the argument made both by the Department and the Guardian ad Litem that Mother's appeal is moot because the earlier termination was ultimately affirmed by this Court. A case is moot when there exists no actual controversy and the appellate court cannot grant actual relief. *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008. Here, Mother's due process claim amounts to the contention that, in Mother's words, "the district court's premature decision irreparably harmed Mother's chances of reuniting with Child." This constitutes an actual controversy for which we could grant the "actual relief" of remanding the case with instructions to the Department to make reasonable efforts to assist Mother to reunify with Child. Accordingly, we conclude that Mother's appeal is not moot. We turn now to a consideration of the merits of Mother's appeal.

**Standard of Review**

**{18}** "[T]he right to raise one's child is a fundamental right protected by the Fourteenth Amendment to the United States Constitution[.]" *Mafin M.*, 2003-NMSC-015, ¶ 18. Termination proceedings must therefore be conducted in a constitutional manner that affords the parent due process of law. *Id.* "Due process of law requires that termination proceedings be conducted with scrupulous fairness to the parent." *Id.* (internal quotation marks and citation omitted). We review de novo the question whether Mother's due process rights were violated when the district court terminated her parental rights. *Id.* ¶ 17.

**{19}** To determine whether due process was satisfied in a termination proceeding, we employ the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mafin M.*, 2003-NMSC-015, ¶ 19. That test requires the weighing of (1) Mother's interest; (2) the risk to Mother of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Id.* Our Supreme Court has recognized an equal balance between a parent's fundamental interest in regaining a parent-child relationship and the state's interest in protecting the welfare of children. *Id.* ¶ 20. In light of that balance, our Supreme Court has stated that "the decisive issue centers on the second factor of the *Mathews* test." *Mafin M.*, 2003-NMSC-015, ¶ 20.

**Mother's Due Process Argument**

**{20}** Mother argues that finding aggravated circumstances on the basis of a prior termination of parental rights that "may well be reversed" on appeal creates a significant risk of an erroneous deprivation of her parental rights in regard to Child. In Mother's view, had she been afforded the time and opportunity to work a treatment plan, with the Department's assistance, the result of the proceedings in regard to Child may well have been different.

**{21}** Mother's argument rests upon the premise that the propriety of the prior termination

6

was placed "in doubt" while her appeal of the prior termination of her parental rights was unresolved in this Court. Mother reasons that the risk of an erroneous deprivation stemmed from the possibility that, had the earlier judgment terminating her parental rights been reversed by this Court, the aggravated circumstances finding, the corresponding deprivation of a treatment plan and lack of Department support, and lack of time to achieve treatment goals, would have been based upon a prior erroneous termination. According to Mother, had she received a treatment plan, Department support, and time to achieve treatment goals, she may have been able to reunify with Child. Mother contends that because of the court's premature determination of aggravated circumstances, termination of her parental rights to Child was a "virtual certainty[.]" That virtually certain termination of her rights to Child would thus have been based upon an erroneous assumption regarding her ability to remedy the conditions that rendered her unable to properly care for Child's sibling. *See* § 32A-4-28(B)(2) (stating the basis upon which a court may terminate a parent's rights to his or her child).

**{22}** Mother argues that the risk of an erroneous decision arising out of the procedure employed here is "unacceptably high" when measured against the importance of the right at stake—that is, her fundamental right to parent Child. She further argues that highly effective substitute procedures are readily available and that their implementation would "far better [ensure] a fair and accurate decision, [and would] cause little delay in finality for [Child]." More specifically, Mother argues that an appropriate "alternative to rushing to find aggravated circumstances before a judgment [has been disposed of] on appeal is to delay [the aggravated circumstances] determination and to require [the Department] to both put in place a treatment plan and [to] offer the parent assistance in working that plan." In Mother's view, delaying an aggravated circumstances finding during the pendency of an appeal from the earlier termination decision is a viable alternative that would conform with the routine functioning of the Department and the district court. *See, e.g.*, § 32A-4-22(C); NMSA 1978, § 32A-4-25 (2009); NMSA 1978, § 32A-4-25.1 (2009).

**Mother's Due Process Argument Is Unpersuasive**

**{23}** Under the facts in this case, we are not persuaded that the district court's aggravated circumstances finding, while a prior termination was pending on appeal, engendered a risk of an erroneous deprivation of Mother's parental rights. The aggravated circumstances finding did not condemn her to failure or lay the ground work for the inevitable termination of her parental rights to Child. Mother was free, on her own behalf, to engage in efforts toward reunification, yet she failed to do so. *See Amy B.*, 2003-NMCA-017, ¶ 5 (recognizing that, notwithstanding a finding of aggravated circumstances, the mother was not "precluded . . . from making efforts on her own behalf in an attempt to alleviate the conditions that led to the abuse and neglect"). For example, among other things, Mother continued to use drugs throughout the pendency of this case, and she remained unemployed and without a home.

**{24}** Additionally, the district court may not terminate parental rights to a child absent a finding "that the conditions and causes of the neglect and abuse are unlikely to change in the

7

foreseeable future[.]" Section 32A-4-28(B)(2). This finding is required regardless of aggravated circumstances. *Amy B.*, 2003-NMCA-017, ¶ 18. And it must be supported by clear and convincing evidence. *See Mafin M.*, 2003-NMSC-015, ¶ 25 (recognizing that the Department is required to present clear and convincing evidence to support termination of a parent's parental rights). Thus, the risk of an erroneous deprivation was minimal because had Mother exhibited a sincere, active, and productive effort to reunify with Child, and had she acted to dispel the concerns that gave rise to statutory exception to the treatment plan and Department efforts requirements, she may well have prevailed in overcoming the Department's contention that the conditions and causes of the neglect and abuse were unlikely to change in the foreseeable future. As it stands, however, Mother does not dispute the "clear and convincing" nature of the evidence that supported the district court's decision to terminate her parental rights in this case.

**{25}** We next consider the probable value of additional or substitute procedural safeguards that might have been employed in this case. Mother suggests only one such procedural safeguard—that is, to have required the district court to delay an aggravated circumstances finding until the earlier judgment was resolved on appeal and, in the interim, to have provided her with a treatment plan aimed at reunification. Under the facts of this case, Mother's argument is unavailing. As indicated in the earlier paragraphs, we do not view the risk of erroneous deprivation under the circumstances to have been more than minimal. That view is fortified by the fact that this Court affirmed the termination of Mother's parental rights to Isiah four months after the termination of Mother's parental rights to Child. Had the circumstances in this case including the timing of the events been substantially different, Mother may have had a stronger position, however, under these facts, Mother's argument provides no basis for reversing the termination of parental rights and requiring the district court to order the Department to engage in reasonable efforts toward reunification of Mother and Child.

**{26}** We do not foreclose the possibility that in some cases where a prior termination of parental rights is pending appeal, the facts or circumstances of the case may call for delaying an aggravated circumstances determination pending the outcome of the appeal. Whether the court should make an aggravated circumstances determination and the timing of such a determination is properly left to the sound discretion of the district court. *See* § 32A-4-22(C); *Amy B.*, 2003-NMCA-017, ¶ 14 (recognizing the court's discretion to find aggravated circumstances). Despite Mother's desire that we do so, we will not attempt either to suggest guidelines or to impose a set of bright-line factors to guide the court's discretionary determination in that regard.

**{27}** In sum, we disagree with Mother's due process arguments relating to the district court's aggravated circumstances finding and the timing of that finding. Under the second *Mathews* factor, we conclude that the risk to Mother of an erroneous deprivation under these circumstances was minimal and that no additional or substitute procedural safeguards were required. *See Mafin M.*, 2003-NMSC-015, ¶ 19. Therefore, we reject Mother's due process claim.

8

**Mother's Legislative Intent Argument**

**{28}** Side-by-side with her due process argument, Mother argues that the district court's use of her prior termination of parental rights that was pending appeal constituted reasonable reversible error because it was contrary to legislative intent. Mother argues that such a procedure is inconsistent with two purposes of the Children's Code, specifically, (1) the preservation of the unity of the family whenever possible, and (2) the provision of judicial and other procedures in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced. *See* NMSA 1978, § 32A-1-3(A), (B) (2009). Mother also argues that the Legislature's use of the past tense in providing the definition of aggravated circumstances in Section 32A-4-2(C)(4) indicates that the Legislature intended the prior termination of parental rights to provide the basis of an aggravated circumstances only where the "prior termination of parental rights was absolutely final." We reject Mother's arguments.

**{29}** First, to the extent that Mother is arguing that because state law incorporates notions of due process, the proceedings violated state law, having already rejected Mother's due process claim, we likewise reject her contention. Second, Mother overlooks the fact that the preservation of family unity "whenever possible" is a secondary consideration, with the primary consideration being "the care, protection[,] and wholesome mental and physical development of children[.]" Section 32A-1-3(A) (stating that the legislative purposes of the Children's Code include "first to provide for the care, protection[,] and wholesome mental and physical development of children . . . *and then* to preserve the unity of the family whenever possible" and explaining that the health and safety of children are the "paramount concern" (emphasis added)). To that end, the district court has been given discretion to alleviate the Department's burden to engage in reasonable efforts at reunification under specific circumstances, including the prior termination of parental rights to a child's sibling. *See* §§ 32A-4-2(C)(4), -22(C)(2).

**{30}** The enactment of the aggravated circumstances provisions was a response to the federally recognized problem in abuse and neglect cases of a tendency to "err on the side of protecting the rights of parents. . . . [The result of which was that] too many children are subjected to long spells of foster care or are returned to families that reabuse them." *Amy B.*, 2003-NMCA-017, ¶ 7 (internal quotation marks and citation omitted). As recognized in *Amy B.*, the aggravated circumstances provisions tend to serve the best interest of the child because "[e]xperience has shown that with certain parents, as is the case here, the risk of recidivism is a very real concern. Therefore, when another child of that same person is adjudged a dependent child, it is not unreasonable to assume [that] reunification efforts will be unsuccessful." *Id.* ¶ 16 (internal quotation marks and citation omitted).

**{31}** Finally, Mother argues that the termination of parental rights is not "absolutely final" when it is the subject of a pending appeal. *Cf. State ex rel. Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶ 15, 142 N.M. 705, 168 P.3d 1129 (recognizing that a judgment terminating parental rights constitutes a final judgment). She bases this argument

9

on a perceived legislative intent that the aggravated circumstances finding is to be delayed pending appeal of an earlier termination. We are not persuaded. The Legislature could have limited the definition of aggravated circumstances to those situations in which an appellant has exhausted her rights to appeal, but it did not. *See State v. Office of Pub. Defender ex rel. Muqqddin*, 2012-NMSC-029, ¶ 47, 285 P.3d 622 (recognizing that the Legislature is free to define statutory elements as it wishes). Moreover, considering that the primary consideration of the Children's Code is the best interest of the child, *see* § 32A-1-3(A), and that children's interests are served by "timely and permanent placement[,]" *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 45, 136 N.M. 53, 94 P.3d 796, we are not persuaded that the Legislature would choose to limit the district court's discretion with a mandate requiring the court to delay a finding of aggravated circumstances in all cases coming within the definition of Section 32A-4-2(C)(4) until an appeal of the prior termination was finally resolved in the appellate process. *See id.* (defining aggravated circumstances as those circumstances in which the parent has had parental rights over a sibling terminated involuntarily).

**The Dissent**

**{32}**     Respectfully, the Dissent's approach is problematic.

**{33}**     To interpret "terminated" in Section 32A-4-2(C)(4) to mean that the issue has been resolved by the highest court to which the parent might seek relief eviscerates legislative intent. That intent is to avoid, where reasonable and appropriate, holding a child in Department-custody limbo where, with respect to the child's sibling, a parent has or parents have already been proven not amenable to Department reunification efforts or otherwise so unfit to parent as to inspire little hope that they will be able to provide appropriate care for the child at issue. *See* §§ 32A-4-2(C)(4), -4-22(C)(2); *Amy B.*, 2003-NMCA-017, ¶¶ 7, 16.

**{34}**     The interpretation results in an unintended mandate that, regardless of the circumstances, where the earlier termination adjudication is on appeal, the parent is guaranteed another go-round with Department reunification efforts for a period that could linger on over a span of a year or more while the child remains in limbo. Considering the high value of timely and permanent placement for children, *see Maria C.*, 2004-NMCA-083, ¶ 45, this interpretation runs afoul of the purpose of the Children's Code and does not have support in legislative intent. In addition, the Dissent's reliance on one dictionary definition of "terminate" leaves open unintended and perhaps unwarranted interpretations or consequences with respect not only to the meaning of "termination" throughout the Children's Code, but also with respect to the concept of "finality" in the appellate process.

**{35}**     The Dissent's view of the issue at hand as being whether "Mother should have been provided services," Dissent ¶ 44, evades focus on the real issue—whether Mother's due process right was violated. An aggravated circumstances finding does not inevitably lead to deprivation of reasonable reunification efforts. The finding has the limited effect of permitting the district court to exercise its discretion whether to alleviate the Department's

10

burden to make such efforts. *See* § 32A-4-22(C)(2). In considering the circumstances, the court can require the Department to engage in reasonable reunification efforts. The due process risk that Mother associates with an aggravated circumstances finding that is based on a potentially reversible prior termination is minimized by the court's discretionary function.

**{36}** Finally, the Dissent indicates that, under the majority's opinion here, in all cases in which reversal on appeal of an earlier termination relating to the sibling occurs, this Court will be forced to "unring the 'aggravated circumstances' bell" with adverse consequences. Dissent ¶ 45. While we acknowledge that reversal of an earlier termination will result in further proceedings in the case involving the sibling as well as the case in which an aggravated circumstances finding was made, we do not agree that these possible circumstances dictate a ruling in this case that adopts Mother's position or the Dissent's view. That position and view are based on an assumption that is, in our view, unsupportable—that in every aggravated circumstances case, the district court will relieve the Department of its reasonable efforts obligation. Moreover, as we have expressed, we do not think that Mother's position and the Dissent's view comports with plain language used by the Legislature, with legislative intent, or with the goals of the Children's Code. If we are mistaken, we respectfully invite the Legislature to set the matter right.

**CONCLUSION**

**{37}** We affirm.

**{38}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

**TIMOTHY L. GARCIA, Judge, dissenting.**

**GARCIA, Judge (dissenting).**

**{39}** I respectfully dissent in this case. I would agree with Mother that the Legislature did not intend for aggravated circumstances under Section 32A-4-2(C)(4) to be applied in proceedings where the termination of parental rights over a sibling remained unresolved on appeal. As a result, it is not necessary to address the related due process issue raised in this appeal. Mother was entitled to assistance from the Department to remedy the causes and conditions that rendered Mother unable to properly care for Child and originally caused

11

Child to come into the Department's custody.

**{40}** Section 32A-4-2(C)(4) defines the particular element of aggravated circumstances applied by the district court in this case as: "*had* parental rights over a sibling of the child *terminated* involuntarily[.]" (Emphasis added.) Mother argued that this definition requires completion and finality in the involuntary termination proceedings pending for Child's sibling, including any appeals. It is not disputed that the termination proceedings for Child's sibling were on appeal and remained unresolved throughout Child's district court proceedings in the present case. Because of the district court's decision to apply aggravated circumstances in this case, the Department did not provide Mother with assistance under Section 32A-4-22(C) to attempt reunification and to remedy the causes and conditions that rendered Mother unable to properly care for Child.

**{41}** This Court reviews issues of statutory interpretation and construction de novo. *State ex rel. Children, Youth & Families Dep't v. Andree G.*, 2007-NMCA-156, ¶ 17, 143 N.M. 195, 174 P.3d 531. The primary goal in statutory construction is "to ascertain and give effect to the intent of the Legislature." *Lobato v. N.M. Env't Dep't.*, 2012-NMSC-002, ¶ 6, 267 P.3d 65 (internal quotation marks and citation omitted). Both parties recognize that when construing a statutory section in reference to the statute as a whole, this Court will consider the several sections together so that all parts are given proper effect and placed in the appropriate context. *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611. "The appellate courts examine the overall structure of the statute and its function in the comprehensive legislative scheme." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. "[W]hen a statute is ambiguous, we may consider the clear policy implications of its various constructions." *Id.* The parties recognize that the statutory construction for the language in Section 32A-4-2(C)(4) has not been previously interpreted by this Court.

**{42}** Initially, the appellate courts start this review "by examining the words chosen by the Legislature and the plain meaning of those words." *Reule Sun Corp.*, 2010-NMSC-004, ¶ 15. Webster's Dictionary provides several primary and secondary definitions for the word "terminate." *Webster's Third New Int'l Dictionary* 2359 (1966). Primary definition includes: "a: to bring to an ending or cessation in time sequence, or continuity : CLOSE . . . (benediction *terminated* the service)." *Id.* A third primary definition states: "c: to end formally and definitely . . . (his employment with the company was *terminated*)." *Id.* One of the secondary definitions states "2: to set a limit to in space : serve as an ending, boundary, limit, dividing line." *Id.* Each of these definitions have a common principle to apply, they recognize a definitive ending or finality to an event or proceeding. As such, an unresolved proceeding, one that is not final and has not reached a definitive end, does not meet the accepted general definition of "terminate" or its past-tense equivalent "terminated." In this case, the generally accepted definition of "terminated" would appear to support Mother's position—where a termination proceeding remains unresolved on appeal and has not yet ended formally or definitely, parental rights to a sibling have not been terminated under Section 32A-4-2(C)(4). However, our Supreme Court has recognized that the

12

application of the plain meaning rule does not end an analysis. *See State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (recognizing that the appellate courts will not rely upon the literal meaning of a statute when such a construction would be absurd, unreasonable, or otherwise inappropriate).

**{43}** We should be looking at the overall legislative scheme regarding the termination of parental rights and address whether the plain meaning of the word "terminated" in Section 32A-4-2(C)(4) contradicts the scheme established by the Legislature under the Abuse and Neglect Act (the Act), NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2009). The majority views this analysis in light of the previous federally recognized problem—that abuse and neglect proceedings were subjecting children to long spells in foster care or returning them to abusive parents. Majority Opinion ¶ 30. This analysis does not explain why the plain meaning interpretation of "terminated" under Section 32A-4-2(C)(4) would subject children to long spells in foster care or return them to abusive parents. In fact, there is no statutory basis under the Act to support the majority's premise that such an undesirable result would occur.

**{44}** At issue is whether Mother should have been provided services from the Department to attempt reunification and remedy the causes and conditions that rendered Mother unable to properly care for Child. These are the same services and plans designed into the Act for all parents who have been adjudicated as abusive or neglectful that otherwise do not meet one of the two narrow statutory exceptions for expediting the process. *See* § 32A-4-22(C). Neither the Department nor the majority challenge the general statutory scheme under the Act. This general scheme attempts to efficiently reunify a child with its natural parents and remedy the causes and conditions that rendered a parent unable to properly care for a child in the first place. The Act was enacted in 1993, presumably to help remedy the historic problem where children spent long spells in foster care or were regularly returned to abusive parents. Mother's interpretation of "terminated" under Section 32A-4-2(C)(4) would not impose any new obligations or procedures upon the Department that are not presently in place. Implementing the standard reunification procedures in this case would not have subjected Child to some indefinite period of limbo or an extraordinary wait for final adjudication. Similar to any normal case, termination proceedings would timely ensue if Mother failed to comply with the Department's reasonable efforts to effectuate reunification.

**{45}** Mother's proposed statutory interpretation is far better than the alternative proposed by the majority. Under the majority's analysis, this Court would be forced to unring the "aggravated circumstances" bell each time a district court erred in its determination that the parental rights to a sibling were terminated but remained unresolved on appeal. Reversal by this Court of a prior termination would not only send the sibling's proceedings back for reconsideration, it would also send the "aggravated circumstances" case for the subsequent sibling back for consideration by the district court for further Department efforts. When considering the best interests of a child and the potential length of time a child could be subjected to further custodial limbo and Department supervision, the majority's decision neither comports with the plain language used by the Legislature in Section 32A-4-2(C)(4)

13

nor efficiently carries out the Act's comprehensive legislative scheme to avoid long periods of potential supervision and foster care.

**{46}**     In conclusion, I do not concur with the result reached by the majority in this case. As a result, I would reverse the district court's previous determination of aggravated circumstances under Section 32A-4-22(C)(2) and remand for further proceedings in an attempt to reunify the family in compliance with the Act.

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State ex rel. CYFD v. Raquel M._, No. 31,869**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Children's Code
 Termination of Parental Rights

**CONSTITUTIONAL LAW**
Due Process
Mootness

**STATUTES**
Interpretation
Legislative Intent