This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38598

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**ANGELA C. f/k/a ANGELA L.,**

Respondent-Appellant,

and

**DEREK L.,**

Respondent,

**IN THE MATTER OF TIANNA L.,
MATTHEW L., and LEVI L.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Bradford Dalley, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Richard J. Austin, P.C.
Richard J. Austin
Farmington, NM

Guardian Ad Litem

**DECISION**

**B. ZAMORA, Judge.**

**{1}**     Angela C., (Mother), appeals the district court's order terminating her parental rights to L.L. and M.L. (Children). Mother argues the district court abused its discretion by admitting hair follicle drug test results and further contends the admission of the results was reversible error. We affirm.

**BACKGROUND**

**{2}**     In September 2017, Children, Youth, and Families Department (the Department) filed an abuse and neglect petition against Mother. The petition alleged that Mother placed Children in situations that could endanger life or health, failed to provide proper parental, educational, and medical care, and that Mother failed to take reasonable steps to prevent Children's older sibling from being physically and sexually abused. Children were placed in the Department's custody in September 2017. In November 2017, Mother pled no contest to the allegation that she failed to provide proper parental, educational, and medical care to Children, and to the allegation that she failed to take reasonable steps to protect Children's older sibling from being physically or sexually abused. The district court entered an order finding that Children were neglected and ordered Mother to comply with a treatment plan developed by the Department. Among other requirements, Mother's treatment plan required her to secure stable housing, undergo psychosexual, mental health, domestic violence, and anger management assessments. In addition, the treatment plan required Mother to participate in random drug screenings, substance abuse treatment, parenting classes, couple's therapy, and to participate in Sexual Abuse Prevention Education (SAPE).

**{3}**     Initially, Mother complied with the treatment plan. Mother secured employment, completed various assessments and parenting classes, was engaged in counseling and complied with her assigned substance abuse treatment plan. As a result, Children began living with Mother as part of a trial home visit on August 6, 2018.

**{4}**     In January 2019, the Department made an emergency change of placement, taking Children from Mother's home and returning them to foster care after the Department obtained evidence of parental substance abuse, domestic violence, and lack of supervision and proper care of Children during the trial home visit period. In February 2019, the district court changed Children's permanency plan to adoption, finding that "[d]uring the trial home visit, [Mother] and two of Children tested positive for illegal drugs" and Mother "has been inconsistent in participating in treatment, complying

with requirements at the Family Crisis Shelter, and maintaining suitable housing for herself and [C]hildren." During the same month, the Department filed a motion to terminate parental rights alleging that Mother was "unable or unwilling to provide parental care or control" for Children.

**{5}**     The termination of parental rights (TPR) hearing began in June 2019, continued in July and concluded in August 2019. During the hearing, Mother's counsel objected to the admission of certain hair follicle drug test results, which were ultimately admitted by the district court. After reviewing the evidence and arguments of the parties, the district court issued findings of fact and conclusions of law. Based on these findings, the district court terminated Mother's parental rights to Children on October 4, 2019. Mother appeals.

## DISCUSSION

### I.     We Need Not Decide Whether Admission of the Hair Follicle Drug Test Results was Error

**{6}**     Mother argues the district court abused its discretion in admitting three hair follicle test results. The State concedes that the district court erred by admitting the hair follicle drug test results with which Mother takes issue but contends that the erroneously admitted test results was harmless error. We review admission or exclusion of evidence by a district court under an abuse of discretion standard. *See Matter of Augustine R.*, 1998-NMCA-139, ¶ 11, 126 N.M. 122, 967 P.2d 462. However, "[e]ven where specific findings adopted by the trial court are shown to be erroneous, if they are unnecessary to support the judgment of the court and other valid material findings uphold the trial court's decision, the trial court's decision will not be overturned." *Normand v. Ray*, 1990-NMSC-006, ¶ 35, 109 N.M. 403, 785 P.2d 743; *see Darla D. v. Grace R.*, 2016-NMCA-093, ¶¶ 66-67, 382 P.3d 1000 (acknowledging that even where some evidence is excluded, termination of parental rights may be appropriate if the remaining evidence supports termination). As we explain below, setting aside the specific hair follicle test results Mother claims were erroneously admitted, substantial evidence supports the district court's order terminating Mother's parental rights to Children.

### II.     Substantial Evidence Supports the District Court's Termination of Parental Rights Even Without Admission of the Hair Follicle Drug Test Results

**{7}**     To terminate a parent's parental rights, the Department must establish that "the child has been . . . neglected . . . and the conditions and causes of the neglect . . . are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." NMSA 1978, § 32A-4-28(B)(2) (2005). The Department has the burden of establishing grounds for termination of parental rights by clear and convincing evidence. *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the

affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). We "will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted).

**{8}** While Mother stresses the importance of the hair follicle test results on appeal, contending that the admission of the results "were a central factor in the district court's decision to terminate Mother's parental rights[,]" our review of the record indicates that the district court relied on a wide range of other evidence in finding that Mother continued to use methamphetamine nearly two years after the Department initiated this case and that the court relied on factors other than Mother's ongoing drug use in making its ultimate decision. [1]

**{9}** We have previously held that a district court may consider evidence of a parent's continued struggle with substance abuse issues in determining whether to terminate parental rights. *See State ex rel. Children, Youth & Families Dep't v. Amy B.*, 2003-NMCA-017, ¶¶ 6, 18, 133 N.M. 136, 61 P.3d 845 (holding that the mother's continued substance abuse was one factor establishing that it was in the best interests of the child to terminate the mother's parental rights); *Vanessa C.*, 2000-NMCA-025, ¶¶ 8-9, 29, 128 N.M. 701, 997 P.2d 833 (affirming termination of parental rights where the mother had made some progress with her substance abuse treatment but continued to use drugs). Three positive hair follicle tests are at issue here, one from September 1, 2017, one from January 3, 2019, and one from May 23, 2019, but the record includes additional evidence of Mother's continued drug use, including in late 2018 and the first half of 2019. In this case, Mother admitted both to her counselors and in open court that she continued to struggle with methamphetamine use. At the TPR hearing, Mother admitted that she had a "couple of relapses," and specifically testified to using methamphetamine while celebrating her birthday on July 12, 2019. A positive rapid test on May 23, 2019— the same date as one of the hair follicle tests at issue here—also indicated that Mother had used methamphetamines and amphetamines, and Mother did not object to introduction of these specific test results during the hearing. Substantial evidence supports the district court's finding that "[d]rugs remain an issue for Mother twenty-three months" after the filing of the case.

**{10}** Another factor that may be considered when deciding whether to terminate parental rights is a parent's failure to participate in and complete assigned counseling and treatment programs. *See State ex rel. Children, Youth & Families Dep't v. William C.*, 2017-NMCA-058, ¶ 31, 400 P.3d 266 (upholding termination of parental rights where

---

[1] Mother does not contest the district court's finding that Children were neglected or the finding that the Department made reasonable efforts. We therefore interpret Mother's argument regarding the admission of the hair follicle tests as a broader challenge to the district court's finding that the conditions and causes of the neglect were unlikely to change in future and we focus our analysis accordingly.

the father failed to participate in and complete assigned treatment and counseling); *accord State ex rel. Children, Youth & Families Dep't v. Laura J.*, 2013-NMCA-057, ¶ 39, 301 P.3d 860 (holding that the department was not required to do more to assist a mother where she "did not fully participate in or cooperate with the services" provided by the department). In this case, Mother's treatment providers testified that she failed to complete her recommended treatment programs and opined that Mother's prognosis was poor. Dr. Michael Castenell treated Mother for mental health and substance abuse disorders. Dr. Castenell originally recommended that Mother be reunited with Children after she demonstrated actual and sustained progress in all areas of her treatment regime; however, when Dr. Castenell reevaluated Mother in January 2019, he became aware that Mother had recurring drug tests that were positive for methamphetamine. As a result, he recommended that Mother attend an inpatient substance abuse treatment program, but Mother was resistant and did not attend. Mother's other treatment providers also testified that Mother never completed her mental health and substance abuse treatment, blamed others for her detrimental behaviors and refused to take responsibility for her drug use and its impact on her Children.

**{11}** In addition, the family counselors treating Mother and Children and the permanency planning supervisor assigned to Mother's case testified that Mother failed to ensure that Children were enrolled in and attending school and were not neglected. During the trial home visits, Mother initially attended family therapy, but later missed several appointments and made last-minute cancellations. The counselor observed that Children had increased anxiety, increased aggression, increased hyperactivity, and appeared unkempt during the trial home visit. Crystal Hubert Mason, the permanency planning worker assigned to the case, testified that during the trial-home visit, there were concerns about the conditions of the home, whether Children were attending school, and Mother's participation in substance abuse and domestic violence services. The Department requested drug tests for Children during the trial home visit because the Department suspected drug use was occurring in the home. Mother's son, L.L., tested positive for methamphetamine on January 22, 2019, and the Children were subsequently removed from the trial home visit after the Department received four substantiated reports of abuse and neglect from Child Protective Services. Overall, Mother's treatment providers agreed that her prognosis for addressing her underlying substance abuse and maternal care issues was poor, and that she continued to fail to attend and make appreciable progress in her assigned counseling programs. The foregoing evidence supports the district court's findings that "Mother did not successfully complete her case plan items and was not honest about her therapy[,]" and that "[h]er behavior throughout this case has been obstructive and deceptive, and her prognosis for change is poor."

**{12}** Excluding the hair follicle drug test results and viewing the evidence in the light most favorable to the judgment, we hold that substantial evidence supported the district court's order terminating Mother's parental rights to Children.

**CONCLUSION**

**{13}**   We affirm.

**{14}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**