This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT**,

      Petitioner-Appellee,

v.                                                                   **No. A-1-CA-37500**

**DONALD G.,**

      Respondent-Appellant,

and

**DUSTIN G.,**

      Respondent.

**IN THE MATTER OF THOMAS G.,**
**KALEIGH G., and WYATT G.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

For Appellee

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant

Richard J. Austin P.C.
Richard J. Austin
Farmington, NM

Guardian Ad Litem

**DECISION**

**VARGAS, Judge.**

**{1}** Father appeals the termination of his parental rights to his three children (Children), arguing that the district court erred in finding the New Mexico Children, Youth and Families Department (CYFD) made reasonable efforts to assist Father in adjusting the causes and conditions of Children's neglect and that CYFD and the district court violated his due process rights. For the reasons that follow, we affirm. As the parties are familiar with the facts and procedural posture in this case, our decision includes only those facts and law necessary to decide the merits.

**BACKGROUND**

**{2}** On August 19, 2016, Farmington Police sought CYFD's assistance to assess the safety of Father's three school-aged children when officers learned that Children were not currently enrolled in school and the family was homeless. CYFD filed a petition alleging that Children were neglected under the Abuse and Neglect Act (ANA), NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2019).[1] The district court awarded CYFD custody of Children, and eventually placed Children with their maternal grandfather and his wife (foster grandmother) (collectively, grandparents) in Eunice, New Mexico on September 12, 2016.

**{3}** On October 31, 2016, the district court entered a stipulated judgment and disposition that Children were neglected under NMSA 1978, Section 32A-4-2(F)(2) (2016) (current version at Section 32A-4-2(G)(2)) and adopted a family treatment plan. The district court found that "[s]ubstance abuse, mental health and housing instability led to [Father] being unable to provide proper care for [C]hildren." The treatment plan required that Father take the following steps toward reunification: undergo a substance abuse evaluation and a mental health evaluation, follow the recommendations that arise from those evaluations, participate in hair analysis and random urinalysis (UA), participate in once weekly visitation with Children via telephone, complete a parenting class, complete "Bio-Parent Orientation," maintain safe and stable housing, seek employment, and complete a medical evaluation.

---

1The petition also named Dustin G. (Mother), whose appeal we decided in *State ex rel. Children, Youth & Families Dep't v. Dustin G.*, No. A-1-CA-37362, dec. (N.M. Ct. App. Apr. 23, 2019) (non-precedential). Our decision today discusses only the facts and law relevant to Father's appeal.

**{4}** Approximately eight and a half months later, in July 2017, CYFD moved to terminate Father's parental rights, alleging that Father was unable or unwilling to provide proper parental care for Children and had not utilized or benefitted from the services designed to remedy the conditions and causes of Children's neglect. After a hearing on CYFD's termination of parental rights (TPR) motion in February 2018, the district court issued extensive findings of fact and concluded that although CYFD made reasonable efforts to reunify the family, it was in the best interests of Children to terminate Father's parental rights. Father appeals.

## DISCUSSION

**{5}** Father makes two arguments on appeal. First, Father argues that the placement of Children with grandparents in Eunice, New Mexico, nine hours away from Father, violated the statutory requirement that CYFD make reasonable efforts toward reunification and violated his due process rights. Second, Father argues that CYFD and the district court violated his due process rights by terminating his parental rights instead of pursuing the less restrictive alternative of permanent guardianship. We address each argument in turn.

### Reasonable Efforts

**{6}** To the extent Father's arguments involve statutory interpretation, our review is de novo. *State ex rel. Children, Youth & Families Dep't v. Steve C.*, 2012-NMCA-045, ¶ 8, 277 P.3d 484. Section 32A-4-28(B)(2) of the ANA provides that the district court shall terminate parental rights if

> the child has been a neglected or abused child as defined in the [ANA] and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

It is CYFD's burden to demonstrate that these elements are met by clear and convincing evidence. *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 21, 132 N.M. 299, 47 P.3d 859.

**{7}** When considering the termination of parental rights, the district court is obligated to "give primary consideration to the physical, mental and emotional welfare and needs" of children. Section 32A-4-28(A). A termination of parental rights must be supported by clear and convincing evidence "that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 37, 421 P.3d 814 (internal quotation marks and citation omitted). Thus, our inquiry on appeal is whether, "viewing the evidence in the light most favorable to the [prevailing party], the factfinder could properly determine that the clear and convincing evidence standard was met." *Id.* ¶ 38. It is not for this Court to

reweigh the evidence, however, and "our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28; *see Keon H.*, 2018-NMSC-033, ¶ 41.

**{8}** When reviewing the district court's determination as to whether CYFD made reasonable efforts to assist the parent in remedying the conditions and causes of neglect, we consider the totality of the circumstances. *Keon H.*, 2018-NMSC-033, ¶ 41. "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (alteration, internal quotation marks, and citation omitted). "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under the law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**Due Process**

**{9}** "Whether an individual [is] afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972 (alteration, internal quotation marks, and citation omitted). When determining whether due process was satisfied in a termination proceeding, we employ the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *State ex rel. Children, Youth & Families Dep't v. Raquel M.*, 2013-NMCA-061, ¶ 19, 303 P.3d 865 ("That test requires the weighing of (1) [parent's] interest; (2) the risk to [parent] of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest."). A parent's fundamental interest in regaining a parent-child relationship and the state's interest in protecting the welfare of children balance equally in this inquiry, rendering the second factor of the *Mathews* test decisive. *See State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 20, 133 N.M. 827, 70 P.3d 1266. Our analysis centers on whether Father has shown that there is a reasonable likelihood that the outcome *might* have been different had he been afforded the additional procedures that he suggests should have been provided. *State ex rel. Children, Youth & Families Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153.

**Foster Placement**

**{10}** Initially, we note that the district court concluded that it was "substance abuse, mental health and housing instability" that rendered Father unable to properly care for Children. Father does not claim that CYFD failed to make reasonable efforts to assist him in adjusting these conditions. *See* Section 32A-4-28(B)(2) (2005) (requiring CYFD to make "reasonable efforts"). Instead, Father contends CYFD "[v]iolated the [r]equirement that CYFD [m]ake [r]easonable [e]fforts to [r]eunite [p]arents and [c]hildren" when it placed Children with their grandparents nine hours away in Eunice, New Mexico, guaranteeing "that the parent-child bond would be irreparably damaged

and that reunification would not be possible." In support of his position, Father argues that, by placing Children with grandparents, CYFD violated ANA's mandate to facilitate reunification.

**{11}** Father initially supported CYFD's decision to place Children with grandparents and never told CYFD that he did not want Children placed with them. Prior to placing Children with grandparents in Eunice, CYFD explored placing Children with their maternal great-grandmother and with other family members in the Farmington area. The great-grandmother's background check raised concerns resulting from her previous service as a foster parent with CYFD, and no other family members in the area were willing to take Children.

**{12}** In evaluating the propriety of the foster placement, we recognize that the Legislature has explicitly required that courts consider family placement, family connections, and family identity in placing children. *See* § 32A-4-22(A) (listing relevant concerns in placement of child, including several aimed at the identification, location, and investigation of relatives for possible placement). While CYFD's placement of Children was not ideal because it limited Father's ability to have in-person visitations, the placement satisfied the legislative intent that courts make reasonable efforts to place Children with family. *See* § 32A-4-22(A)(6)-(8) (requiring district court to enter findings considering whether reasonable efforts have been made to evaluate family placement and consider family identity and connections); *see also* § 32A-4-25(I)(6) (permitting the district court to overrule CYFD's placement decision only where "the court determines [CYFD] . . . abused its discretion in the placement or proposed placement of the child"). Moreover, when CFYD was unable to place Children with a relative in the area, it sought to ameliorate the impact of the long-distance relocation and maintain the bond between Father and Children by arranging the opportunity for Father to make one-hour FaceTime video conference calls with Children every week. CYFD also provided Father the opportunity for two supervised phone calls with Children per week. CYFD provided Father access to a phone if he was unable to call from his personal cell phone. CYFD provided Father with a bus pass so that he could use public transportation to attend FaceTime visits and make phone calls to Children. CYFD also offered to personally transport him to appointments, if necessary. Despite this offer, Father never asked CYFD for transportation. Finally, CYFD attempted to have Children transported to see their parents and to have the parents transported to see Children, but budgetary constraints and the reluctance of family members to assist with overnight accommodations prevented those in-person visits. Notwithstanding CYFD's efforts to arrange video conference and phone visits with Children, Father failed to take full advantage of these opportunities. As of July 2017, when the TPR motion was filed, Father had attended twenty-four of the approximately forty-two FaceTime calls CYFD had arranged. Father typically only called Children once a month, sometimes less, and never sought additional phone visits.

**{13}** As we consider the propriety of CYFD's foster placement of Children, we look to the totality of the circumstances surrounding the district court's determination that Father failed to adjust the conditions that rendered him unable to properly care for

Children and those "causes of the neglect are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD]." *See* § 32A-4-28(B)(2); *see also Keon H.*, 2018-NMSC-033, ¶ 41 (noting that we consider the totality of the circumstances). Specifically, the district court found Father "has a severe drug abuse problem . . . that requires in-patient treatment," Father failed to do any substance abuse treatment, and did not complete any UA testing. Father was diagnosed with several mental disorders and obtained prescriptions for medications to treat those disorders, but refused to obtain Medicaid or to take the prescribed medications. The district court also found that Father moved the family between homeless shelters, tents, motels and friends' homes and that he "obtained a house for a time that was uninhabitable." Father did not challenge any of the district court's findings related to his failure to adjust the causes of his neglect of Children, and we are bound by them when conducting our review. *See* Rule 12-318(A)(4) NMRA (requiring that the argument of the brief in chief "set forth a specific attack on any finding, or the finding shall be deemed conclusive"); *see also State ex rel. Children, Youth & Families Dep't v. Mercer-Smith*, 2015-NMCA-093, ¶ 26, 356 P.3d 26 (acknowledging specific challenges to certain findings of fact and noting that "[a]ny unchallenged findings are binding on appeal"), *rev'd on other grounds*, 2019-NMSC-005, 434 P.3d 930. Considering the totality of the circumstances, including CYFD's placement of Children with family in accordance with legislative intent, Father's failure to take advantage of FaceTime and telephone calls to Children, and Father's failure to remedy his substance abuse, mental health, and homelessness issues that rendered him unable to properly care for Children, we conclude that sufficient evidence of a clear and convincing nature supported the district court's determination that CYFD made reasonable efforts to assist Father.

**{14}** To the extent that Father argues that the placement violated his due process rights because CYFD failed to make reasonable efforts to reunite him with Children, we are unpersuaded. Father has failed to demonstrate a reasonable likelihood that his parental rights might not have been terminated had Children been placed closer to Father in light of his failure to remedy the causes of Children's neglect. *See Browind C.*, 2007-NMCA-023, ¶ 31.

**Permanent Guardianship**

**{15}** Father argues that CYFD and the district court violated his due process rights by terminating his parental rights instead of pursuing the less restrictive alternative of permanent guardianship. The facts in the record demonstrate that CYFD believed permanent guardianship was an option early on in the proceedings and that CYFD informed foster grandmother and Father that guardianship was an option. At the close of the TPR hearing, the district court noted that, while guardianship "sound[s] somewhat attractive to the [district] court," it was a compromise that did not meet the best interests of Children. The district court concluded guardianship was not appropriate because it would not provide Children with the permanence and stability they needed in light of Father's failure to make any meaningful efforts to remedy the circumstances that brought Children into the system since the proceedings began and those circumstances were unlikely to change in the foreseeable future. The district court concluded that

Father had failed and refused to address many, if not all of the causes of Children's neglect. Given Father's failure to address the causes of neglect, Father has failed to show that there is a reasonable likelihood that his parental rights might not have been terminated had the district court granted grandparents permanent guardianship. *See Browind C.*, 2007-NMCA-023, ¶ 31 (requiring a showing that there is a reasonable likelihood that the outcome *might* have been different if additional procedures had been afforded). "The [district] court was not constitutionally required to leave open the possibility that [Father] could become able, at some undetermined point in the future, to parent [C]hildren adequately." *State ex rel. Children, Youth & Families Dep't v. B.J.*, 1997-NMCA-021, ¶ 18, 123 N.M. 99, 934 P.2d 293.

**CONCLUSION**

**{16}** We affirm the district court's decision.

**{17} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**